UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LECHUGA and SHAMSADIN MUHAMMAD, on behalf of themselves and all similarly situated employees, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:20-cv-03378-EEB-BWJ |
| v. | ) ) | |
| ELITE ENGINEERING, INC., et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' COMBINED MOTION TO CONDITIONALLY
CERTIFY COLECTIVE ACTION, ORDER DISCLOSURE OF PUTATIVE
MEMBERS' NAMES AND CONTACT INFORMATION, AND TO FACIL-
ILITATE CLASS NOTICE, AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully move this Court for an Order conditionally certifying this case as a collective action and authorizing Plaintiffs to send notice under § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to all current and former cable television installation technicians who have worked for Defendant Elite Engineering, Inc. (collectively "the Technicians") at any time during the last three years. Plaintiffs further move the Court to order Defendants (hereinafter collectively "Elite") to provide Plaintiffs with a computer-readable data file containing the name, last known address and dates of service for each such Technician, to conspicuously post notice of this case in the company's break rooms, and to disseminate notice with paychecks and/or pay stubs. In support of this motion, Plaintiffs incorporate the attached memorandum.

WHEREFORE, Plaintiffs respectfully request that the Court grant this motion and all relief sought herein and for such further relief as the Court deems equitable and just.

## **TABLE OF CONTENTS**

**Page**

Memorandum in Support………………………………………………… 1

I.     Preliminary Statement………………………………………… 1

II.    Statement of Relevant Facts………………………………………... 1

III.   Argument…………………………………………………………... 11

        A.    Conditional Certification…………………………………………. 11

        B.    Relevant Substantive Law………………………………………… 12

        C.    The Two-Tier Analysis…………………………………………… 13

        D.    This Case Should be Conditionally Certified
            as it Satisfies the Lenient First-Tier Standard……………………… 16

        E.    Misclassification Claims Are Routinely Conditionally
            Certified…………………………………………………………….. 17

        F.    Notice …………………….……………………………….. 18

IV.   Conclusion………………………………………………………. 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**                                                                                    **Page**

*Altamirano-Santiago v. Better Produce, Inc.,* 2019 U.S. Dist.
    LEXIS 128099 (C.D. Cal. Jul. 30, 2019)…………………………………………..     19

*Balarezo v. NTH Connect Telecom., Inc.,* 2008 U.S. Dist.
    LEXIS 53102 (N.D. Cal. May 2, 2008)…………………………………………….     18

*Bartels v. Birmingham,* 332 U.S. 126 (1947)…………………………………………     13

*Bastian v. Apartment Inv. and Mgmt. Co.*, 2007 U.S. Dist.
    LEXIS 97269 (N.D. Ill. Sept. 17, 2007)…………………………………………….     16

*Bhumithanarn v. 22 Noodle Mkt. Corp.,* 2015 U.S. Dist. LEXIS
    90616 (S.D.N.Y. Jul. 13, 2015)…………………………………………………..     19

*Boltinghouse v. Abbott Labs., Inc.*, 196 F.Supp.3d 838 (N.D. Ill.
    2016)………………………………………………………………………………     14

*Briggs v. PNC Fin. Servs. Grp.,* 2016 U.S. Dist. LEXIS 33703
    (N.D. Ill. Mar. 16, 2016)…………………………………………………………     15

*Brooks v. Safety-Kleen Sys.*, 2012 U.S. Dist. LEXIS 117035 (N.D.
    Ill. Aug. 14, 2012)………………………………………………………………..     20

*Chen v. Asian Terrace Rest.,* 2020 U.S. Dist. LEXIS 126417
    (E.D.N.Y. Jul. 17, 2020)…………………………………………………………     19, 20

*Dennis v. Greatland Home Health Servs.,* 2020 U.S. Dist. LEXIS
    21162 (N.D. Ill. Feb. 7, 2020)……………………………………………………     14, 15,
                                                                                              19

*Dennis, et al. v. Greatland Home Health Servs., Inc., et al.,* Case No.
    1:19-cv-05427-EEB (N.D. Ill. Feb. 7, 2020), ECF # 29……………………………..     18

*Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991)………………….     19

*Edwards v. Multibrand Corp.,* 2011 U.S. Dist. LEXIS 3460 (D. Minn.
    Jan. 13, 2011)……………………………………………………………………     18

*Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418 (M.D. Ala. 1991)…………….     16

*Girolamo v. Cmty. Physical Therapy & Assocs.*, 2016 U.S. Dist. LEXIS
    90128 (N.D. Ill. July 12, 2016)……………………………………………………     13

*Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28 (1961)…………………………… 13

*Goss v. Tyler Traditions, Inc.,* 2019 U.S. Dist. LEXIS 175693 (E.D. Tex. Jul. 22, 2019)……………………………………………………………….. 19

*Harkins v. Riverboat Servs., Inc.,* 385 F.3d 1099 (7th Cir. 2004)……………………… 11

*Hobbs v. Cable Mktg. & Installation of La.,* 290 F.Supp.3d 589 (E.D. La. Feb. 6, 2018)………………………………………………………….. 17

*Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989)………………………………….. 11, 15, 18

*Hudgins v. Total Quality Logistics, LLC,* 2016 U.S. Dist. LEXIS 178356 (N.D. Ill. Dec. 23, 2016)……………………………………………….. 14

*Jackson v. Synergies3 Tec Servs., LLC,* 2019 U.S. Dist. LEXIS 187848 (E.D. Mo. Oct. 29, 2019)……………………………………………….. 17

*Jirak v. Abbott Labs., Inc.,* 566 F.Supp.2d 845 (N.D. Ill. 2008)……………………….. 14, 15

*Kautsch v. Premier Commun's.,* 504 F.Supp.2d 685 (W.D. Mo. Jan. 23, 2007)……………………………………………………………….. 18, 19

*Kim v. Capital Dental Tech. Lab, Inc.*, 279 F.Supp.3d 765 (N.D. Ill. 2017)…………….. 14

*Kujat v. Roundy's Supermarkets, Inc.,* 2019 U.S. Dist. LEXIS 74149 (N.D. Ill. May 2, 2019)………………………………………………………….. 14

*Larsen v. Clearchoice Mobility*, 2011 U.S. Dist. LEXIS 80899 (N.D. Ill. July 25, 2011)………………………………………………………….. 14, 15, 16

*Meseck v. TAK Commun's., Inc.,* 2011 U.S. Dist. LEXIS 32583 (D. Minn. Mar. 28, 2011)………………………………………………………….. 18

*Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759 (N.D. Ill. 2004)………………….. 16

*Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770 (N.D. Ill. 2007)………………………………………………………………………….. 14

*Monroe v. FTS USA, LLC,* 257 F.R.D. 634 (W.D. Tenn. 2009)………………………… 18

*Montero v. JPMorgan Chase & Co.,* 2017 U.S. Dist. LEXIS 63429 (N.D. Ill. Mar. 22, 2017)………………………………………………………….. 14-15

*Musarra v. Digital Dish, Inc.,* 2008 U.S. Dist. LEXIS 110003 (S.D.
   Ohio Mar. 24, 2008)…………………………………………………………… 18

*Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318 (1992)……………………………… 12

*Osterholt v. CorePower Yoga, LLC,* 2017 U.S. Dist. LEXIS 75663
   (N.D. Ill. May 18, 2017)…………………………………………………………… 20

*Perry v. Krieger Beard Servs., LLC,* 2018 U.S. Dist. LEXIS 109765
   (W.D. Ohio Jul. 2, 2018)………………………………………………………….. 17

*Persin v. CareerBuilder, LLC*, 2005 U.S. Dist. LEXIS 29727 (N.D. Ill.
   Nov. 23, 2005)……………………………………………………………………... 16

*Pieksma v. Bridgeview Bank Mortg. Co., LLC,* 2016 U.S. Dist. LEXIS
   177177 (N.D. Ill. Feb. 26, 2014)…………………………………………………… 15

*Rottman v. Old Second Bancorp,* 735 F.Supp.2d 988 (N.D. Ill. 2010)………………… 16

*Russell v. Ill. Bell Tel. Co., Inc.,* 721 F.Supp.2d 804 (N.D. Ill. 2010)………………… 14

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947)………………………….. 13

*Sec. of Lab. v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987), cert. den.,
   488 U.S. 898 (1988)……………………………………………………………….. 13

*Simmons v. Broadway Home Improvement Inc.,* 2014 U.S. Dist. LEXIS
   102420 (S.D. Ind. Jul. 28, 2014)…………………………………………………… 17

*Simpkins v. DuPage Hous. Auth.,* 893 F.3d 962 (7th Cir. 2018)………………………… 12

*Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981 (N.D. Ill. 2018)………….. 15

*Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746 (N.D. Ill. 2010)…………………… 16

*Soler v. G&U, Inc.*, 86 F.R.D. 524 (S.D.N.Y. 1980)…………………………………… 19

*Swinney v. AMcomm Telecom., Inc.,* 2013 U.S. Dist. LEXIS 119749
   (E.D. Mich. Aug. 23, 2013)………………………………………………………… 17-18

*Vanskike v. Peters,* 974 F.2d 806 (7th Cir. 1992)………………………………………… 12-13

*Watt v. Fox Rest. Venture, LLC*, 2019 U.S. Dist. LEXIS 26959 (C.D.
   Ill. Feb. 20, 2019)………………………………………………………………… 20

*White v. Integrated Electronic Techs., Inc.,* 2013 U.S. Dist. LEXIS 83298
(E.D. La. Jun. 13, 2013)…………………………………………………….. 18

**Statutes:**

29 U.S.C. § 201………………………………………………………………... 1

29 U.S.C. § 202…………………………………………………………… 11

29 U.S.C. § 206…………………………………………………………… 12

29 U.S.C. § 207…………………………………………………………… 11, 12

29 U.S.C. § 216…………………………………………………………… 1, 11, 12

29 U.S.C. § 256…………………………………………………………… 19

29 U.S.C. § 257…………………………………………………………… 19

## MEMORANDUM IN SUPPORT

### I.     PRELIMINARY STATEMENT

Elite is a cable television installation contractor.  Its primary business is installing cable television service.

Count I of Plaintiffs' Amended Complaint seeks recovery of unpaid regular and overtime wages under the FLSA, 29 U.S.C. § 201 *et seq.*, resulting from misclassification of the Technicians as "independent contractors."  ECF Doc. # 17.

This motion seeks to protect the rights of Elite's current and former Technicians.  The collective action sought is comprised of all Elite's Technicians at any time from the date three years preceding court-approved notice to the present, who were paid on a "piece rate" basis, and who have not already had their claims for unpaid overtime wages previously adjudicated. Plaintiffs request permission to send them notice under § 16(b) of the FLSA, 29 U.S.C. § 216(b), informing them of their right to join this case, and allowing them to decide whether to seek their unpaid compensation. Without the requested court-ordered notice, many workers will never learn about this case and their viable claims will silently slip away under the FLSA statute of limitations.

Through the detailed allegations of the Complaint, detailed declarations verifying Elite's treatment of the Technicians, plus numerous examples of Elite's own electronic communications, Plaintiffs far exceed the mere "minimal showing" required for conditional certification under 29 U.S.C. § 216(b).

### II.     STATEMENT OF RELEVANT FACTS

Elite Engineering, Inc. is a cable television installation company. Defendants John and Gina Urso own and operate Elite Engineering, Inc.

1

The Technicians perform Elite's primary business activity of installing cable television. Elite assigns the Technicians to various geographic areas around several states as needed to perform Elite's cable television installation services.

The evidence attached hereto shows that Elite closely supervises and controls the Technicians' employment and conduct.

Elite assigns the Technicians to work under specific supervisors employed by Elite. Ex. A & B, ¶ 4; *see also, e.g.,* Ex. D, Bates 3, 4. If fact, Elite's supervisor texted Technician Lonnie Spells instructing him to "respect me and my title because I'm quite sure I have earned it." Ex. D, Bates 3. That supervisor also texted Mr. Spells declaring, "I'm never wrong I'm the fregging boss." *Id.*, Bates 4.

Elite's supervisors use an electronic WhatsApp communication system to communicate with, assign and supervise Technicians frequently during the course of each workday. Ex. C.

Elite's supervisors assign the Technicians' work schedules. Ex. A & B, ¶ 5; *see also, e.g.,* Bates 10; Ex. D, Bates 8. As evidence, at 9:10 a.m. on September 15, 2019, Elite's supervisor told Technicians that "[e]veryone works ever[y]day but Wednesday" and "[e]veryone works Sunday[.]" Ex. C, Bates 10. As further evidence, Elite's supervisor texted Mr. Spells, "login to techmobile before 7:30 be on your first job beginning of the time fame…" Ex. D, Bates 8.

Elite's supervisors change the Technicians' work schedules. Ex. A & B, ¶ 5; *see also, e.g.,* Ex. C, Bates 42. For example, at 5:18 p.m. on September 20, 2019, Elite's supervisor instructed its dispatcher to "find whichever Tech is open that's closest to that job move it to them…" Ex. C, Bates 42. At 5:25 p.m. on September 20, 2019, Elite's supervisor warned Technicians that "if you are open you will get jobs dropped on you." *Id.*, Bates 43.

Elite's supervisors assign the Technicians to perform particular jobs during assigned time frames, and thus assign the Technicians daily "routes." Ex. A & B, ¶ 6; *see also, e.g.,* Ex. C, Bates 10, 16. As evidence, at 7:22 a.m. on September 16, 2019, a Technician asked "[c]an I start at 9 instead of 8." Two minutes later, Elite's supervisor responded, "[a]ll the *routes* have a 8 [a.m. installation appointment] already except 1 tech and he is working." Ex. C, Bates 16. (emphasis added). When a Technician stated that he had to move his residence on a workday, Elite's supervisor promptly responded at 9:13 a.m. on September 15, 2019 that "[t]hat's unacceptable I cannot cover your *route* sir." *Id.*, Bates 10 (emphasis added).

Elite requires the Technicians to acknowledge their job assignments by a certain time. Ex. A & B, ¶ 7, *see also, e.g.,* Ex. C, Bates 177 (supervisor demanding that "[e]veryone should be logged in acknowledge the first job and have their ETA set").

Elite requires the Technicians to log in to computer systems and to clock in by specified times. For example, Elite's supervisor texted Mr. Spells, "it is 7:37 you are still clocked out you have two jobs on you then.." Ex. D, Bates 7.

Elite requires the Technicians to report their estimated times of arrival ("ETAs") at assigned work sites. Ex. A & B, ¶ 9; *see also, e.g.,* Ex. C, Bates 1, 18, 393. For example, at 11:01 a.m. on September 14, 2019, Elite's supervisor instructed Technicians to "ETA your next jobs guys 1949 has a 10 needs an eta." Ex. C, Bates 1. On September 16, 2019, Elite's supervisor instructed Technicians, "[g]uys you can ETA your job that you're currently on this needs to be done for every single job all day long." *Id.*, Bates 18. As another example, at 5:52 p.m. on December 5, 2019, Elite's supervisor demanded a Technician to "[f]ix ur eta !!!." *Id.*, Bates 393.

Elite requires the Technicians to be in route to assigned job sites by specified times. Ex. A & B, ¶ 10, Ex. D, Bates 1. For example, Elite's supervisor texted Mr. Spells, "I just need you to

log in by 730 and be enroute before 8am sir otherwise I'm getting my ass chewed sir…" Ex. D, Bates 1.

Elite requires the Technicians to inform dispatchers of their arrival at assigned job sites. Ex. A & B, ¶ 11.

Elite requires the Technicians to obtain Elite's permission to begin jobs prior to Elite's assigned start times. Ex. A & B, ¶ 12; *see, e.g.,* Ex. C, Bates 43. On September 20, 2019, Elite's supervisor informed Technicians that "you are to get permission from Z [dispatcher] before you early access any job." Ex. C, Bates 43.

Elite requires the Technicians to log out from its computer system at the end of each job. Ex. A & B, ¶ 13.

Elite has required Technicians to call their supervisors from job sites. Ex. A & B, ¶ 14; *see also, e.g.,* Ex. C, Bates 40. For example, at 10:26 a.m. on September 20, 2019, Elite's supervisor informed a Technician, "this is unacceptable you are to call me prior to completing any job." Ex. C, Bates 40.

Elite grants or denies the Technicians permission to not complete an assigned job. Ex. A & B, ¶ 15; *see also, e.g.,* Ex. C, Bates 41. As evidence, at 12:19 p.m. on September 20, 2019, Elite's supervisor informed Technicians:

> Guys please remember this
> Supervisor who gave you the ok to down a job
> Roy McClung or
> Jeff Birman

Ex. C, Bates 41.

Elite requires the Technicians to appear at specified times and locations to attend meetings regarding work issues. Ex. A & B, ¶ 16; *see also, e.g.,* Ex. C, Bates 46, 70. At those meetings, Elite's supervisors review the Technicians "metrix," coach the Technicians to achieve better

4

"numbers," and address work problems. Ex. A, ¶ 16, Ex. C, Bates 70 (warning Technicians about their "numbers"); Bates 308 ("our numbers are horrible in regards to ETA"). Similarly, for example, at 2:27 p.m. on September 21, 2019, Elite's supervisor communicated to a Technician "Lorenzo? What's the issue sir dont mess up my number sir." Ex. C, Bates 46.

Elite requires the Technicians to return parts and equipment at specified times and locations. Ex. A & B, ¶ 17.

Elite maintains written rules governing the manner in which the Technicians perform their jobs. Ex. A & B, ¶ 18; *see also, e.g.,* Ex. D, Bates 6. Elite's supervisor admitted those rules in a text message to Mr. Spells stating, "[s]end me an email to roy-mcclung@eliteteaminc.com asking for the tqa rules and will send it to you but if I send that to you I expect this to be compl[ia]n[c]e going forward… you say you doing this awhile you should have known sir[.]" Ex. D, Bates 6.

Elite's supervisors instruct the Technicians how to perform their jobs. Ex. A & B, ¶ 19; *see also, e.g.,* Ex. C, Bates 46; Ex. D. Bates 5. As an example, Elite's supervisor texted Mr. Spells, "[n]ationwide for all three major cable companies always has been we have to go under any obstacle that were able to get that line under that would prevent the bury crew from burying the line… Just going forward it needs to go on derr [under] the ped[.]" Ex. D, Bates 5. As another example, at 2:27 p.m. on September 21, 2019, Elite's supervisor informed Technicians that "it is our responsibility to fix these levels we cannot just leave failing levels if you reach out to me 99% of the time I'll be able to help you walk through it over the phone." Ex. C, Bates 46.

Elite monitors and supervises Technicians' work, including supervisors conducting follow-up visits to critique, approve or disapprove the Technicians' work. Ex. A & B, ¶ 20; *see also, e.g.,* Ex. C, Bates 3, 17. At 1:25 p.m. on September 14, 2019, Elite's supervisor warned Technicians

that they should "[e]xpect to be qc'd [quality controlled.]"  Ex. C, Bates 3.  At 9:55 a.m. on

September 16, 2019, Elite's supervisor similarly warned Technicians that he "will be doing QC's

today so if you are done and you leave make sure your job is closed in penguin if I show up and

your not there I will have you returned keep penguin up to date guys."  *Id.*, Bates 17.

As an example of critiquing the Technicians' work, on September 21, 2019, Elite's

supervisor admonished a Technician, "[i]f you dont know how to fix it why load the damn meter

load... its unacceptable[.]"  *Id.*, Bates 46. Later that day, Elite's supervisor scolded Technicians:

> We had 4 fails today total
> 0602 could have been fixed
> 3913 could have been fixed
> 1079 had 2 fails and one should have been fixed before restarted due to ingress and the
> other could have been fixed as well

*Id.*, Bates 49.

Elite requires the Technicians to photograph customers' homes to prove that they were

present at assigned work sites.  Ex. A & B, ¶ 21; *see also, e.g.,* Ex. C, Bates 11.  For example, at

10:57 on September 15, 2019, Elite's supervisor instructed Technicians that "you need to take a

picture of the house preferably with your truck in it or you in it or something proving that it's not

a Google Street view and I need that sent to me please."  Ex. C, Bates 11.

Elite requires the Technicians to photograph customers' homes, or parts of those homes, to

show why an assigned job cannot be performed.  Ex. A & B, ¶ 22; *see also, e.g.,* Ex. C, Bates 12,

24. For example, at 12:04 p.m. on September 14, 2019, Elite's supervisor instructed Technicians:

> Guys if a job's going down you need to text me pictures & screenshot of the work
> order and tell me why it's going down not to group I have sent more than half a
> dozen emails this morning I'm constantly asking if it's a not home I need a
> picture of the house if it's a pre-bury I need a picture from the tap to the house if
> its no access I need a picture to why if it's not serviceable I need a picture and the
> reason.

*Id.*, Bates 12; *see also, e.g., id.,* Bates 24 (demanding "[a]ny and ALL jobs that go down I need job# i.e. screenshot of the work order pictures as to the reason and a very short explanation all text to me even not homes").

Elite requires the Technicians to submit meter readings from job sites to its supervisors.  Ex. A & B, ¶ 23; *see also, e.g.,* Ex. C, Bates 7, 11, 19.  For example, at 8:15 p.m. on September 14, 2019, Elite's supervisor instructed Mr. Spells, "Lonnie need meter loads ASAP."  Ex. C, Bates 7. At 1:54 p.m. on September 15, 2019, Elite's supervisor instructed Technicians that "everybody should be off that list everyone needs to be doing their meter loads at the end of every job[.]" *Id.*, Bates 11.  At 1:49 p.m. on September 16, 2019, Elite's supervisor threatened, "if those 4 guys do not updated their meter loads let me know will start pulling work off of them if they want there work back they can do their job right the first time." *Id.,* Bates 19.

Elite assigns Technicians to return to job sites to correct or complete their work.  Ex. A & B, ¶ 24; *see also, e.g.,* Ex. C, Bates 3, 37.  For example, at 1:18 p.m. on September 14, 2019, Elite's supervisor warned Technicians, "…I will go QC [quality control] and you will return."  Ex. C, Bates 3.  On September 19, 2019, Elite's supervisor warned Technicians, "[g]uys get your meter loads done you are not to leave the field if I get back to a hotel and see anyone at the hotel and they're on this list I will follow you back to your last job to get these loads done." *Id.*, Bates 37.

Elite's supervisors instruct the Technicians how to perform and / or fix their work.  Ex. A & B, ¶ 25; *see also, e.g.,* Ex. C, Bates 7.  For example, at 6:47 p.m. on September 14, 2019, Elite's supervisor wrote, "Janel I have never had a line that can[']t get a fitting on, even when freezing, cut it on the side shield only for a ¼ inch and that should help."  Ex. C, Bates 7.

Elite requires the Technicians to obtain permission to deviate from Elite's standard methods. Ex. A & B, ¶ 26; *see also, e.g.,* Ex. C, Bates 5.  For example, at 3:21 p.m. on September 14,

2019, a Technician ask Elite's dispatcher, "[c]an I add customer own modem by myself?" One minute later, Elite's dispatcher responded, "[n]o call dispatch so they can do it for you." Ex. C, Bates 5.

Elite decides when Technicians may clock out at the end of shifts. Ex. A & B, ¶ 27; *see also, e.g.,* Ex. C, Bates 43, 390, 392. For example, at 5:55 p.m. on October 17, 2019, Elite's supervisor informed Technicians that he was "[l]etting techs go." Ex. C, Bates 390. As another example, at 7:31 p.m. on October 29, 2019, Elite's supervisor instructed a Technician to "[c]lock out." Ex. C, Bates 392. Similar instructions to "clock out" are commonplace. *Id.*, *passim.* At 7:03 p.m. on September 20, 2019, Elite's dispatcher stated that "if [a Technician's] meter loads are done he's clear to eod [indicate his end of work day] on my end." *Id.*, Bates 43.

Elite monitors the Technicians through a tracking application. Ex. A & B, ¶ 28, Ex. C, Bates 3; Ex. D, Bates 2. For example, at 1:14 p.m. on September 14, 2019, Elite's supervisor told Technicians that "[t]ime on job and close a job to start your next job are being watched[.]" Ex. C, Bates 3. As another example, Elite's supervisor texted Mr. Spells, "[t]he CMT is watching the board now and is on my ass about guys not logged in by 730[.]" Ex. D, Bates 2.

Elite instructs Technicians to proceed to their next assigned job site. Ex. A & B, ¶ 29; *see also, e.g.,* Ex. C, Bates 390, 392. For example, at 2:24 p.m. on October 15, 2019, Elite's supervisor instructed a Technician to "Go enroute to the job." Ex. C, Bates 390. As another example, at 10:16 a.m. on December 19, 2019, Elite's supervisor demanded a Technician to "[g]o enroute !!!." *Id.*, Bates 392.

Elite evaluates the Technicians' performance based on quality standards, completion rates, time requirements, and rates of return visits to job sites. Ex. A & B, ¶ 30; *see also, e.g.,* Ex. C, Bates 1. For example, at 11:28 a.m., Elite's supervisor informed Technicians that "[t]hese cable

box load times are horrible.  Especially dvrs.  Cable boxes plus doj hold times are gonna make timeframes close.  Bullshit[.]"  Ex. C, Bates 1.

Elite instructs the Technicians how to communicate with customers.  Ex. A & B, ¶ 31, Ex. C, Bates 2-3, 18.  For example, at 12:49 p.m. on September 14, 2019, Elite's supervisor instructed Technicians that, "[p]er the CMT once you submit for provisioning [y]ou should educate the customer and let them know show come up and follow up with the customer so you don't get a repeat[.]"  Ex. C, Bates 2-3.   As another example, at 11:11 a.m. on September 16, 2019, Elite's supervisors instructed Technicians:

> Guys I understand that wait times are outrageous but you keep your comments 100% to yourself do not say nothing in front of the customer if the customer brings it up let them know that there is an outage whole times are just abnormally long but you guys should not be sitting in the e house complaining I do not want to get an email from Spectrum that a customer stating that you guys were talking bad or anything like that in front of them about Spectrum.

*Id.*, Bates 18.

Elite requires the Technicians to request time off from work in advance.  Sometimes Elite denies those requests.  Ex. A & B, ¶ 32; *see also, e.g.,* Ex. C, Bates 373 ("if you need time off it needs to be approved in advance").

Elite warns the Technicians of discipline based on their performance and/or conduct, including, but not limited to, warning Technicians of suspension, having their routes or assigned jobs taken away and termination.  Ex. A & B, ¶ 33; *see also, e.g.,* Ex. C, Bates 19, 37-38.  For example, at 1:49 p.m. on September 16, 2019, Elite's supervisor stated "if those 4 guys do not updated their meter loads let me know will start pulling work off of them if they want the[i]r[] work back they can do their job right the first time."  Ex. C, Bates 19.   At 6:44 p.m. on September 19, 2019, Elite's supervisor warned Technicians, "[g]uys I'm really not a******* but this is ridiculous every single day it's getting extremely old and I am going to start being

9

a****** trust me ask any of the B& B guys they know." *Id.,* Bates 37 (asterisks in original).

Less than an hour later, Elite's supervisor warned Technicians:

> All right guys since you don't want to do your job I'll go do them and I will move your jobs in penguin off of you and I'll get paid for your work 7 p.m. whoever's on this list will not get paid for those jobs don't know how else to get you to do your dob what is the deal.

*Id.*, Bates 38.

> Less than 15 minutes later, Elite's supervisor further warned Technicians:

> Fred 7 put the list back up whoever is on that list move their job in penguin over to my tech number as I will be in the field finishing up doing their job guys you got less than 10 minutes to get your meter loads done or you will not be paid for those jobs.

*Id.*, Bates 38.

Less than 5 minutes later, Elite's supervisor further warned Technicians, "[i]f you're on this list in 4 minutes your jobs will be moved off of you complete your meter loads." *Id.*, Bates 38.

As further evidence of warning job discipline, at 9:40 a.m. on September 21, 2019, Elite's supervisor warned Technicians, "[i]f I ever hear any of you guys down a job because you don't speak Spanish I will do everything in my power to get you out of this system we have a translator you have Google translate push come to shove you call Z [dispatcher.]" *Id.*, Bates 49-50.

Elite has disciplined at least some of the Technicians based on performance and/or conduct, including, but not limited to, refusing to assign some of them work for specified intervals of time. *Ex. A & B, ¶ 34; see also, e.g.,* Ex. C, Bates 53-54. For example, at 5:41 p.m. on September 22, 2019, Elite's supervisor informed a Technician named "Patrick" that his "jobs are being pulled. Ex. C, Bates 53. Less than a half hour later, Elite's supervisor told that Technician, "Patrick make sure you get your personal belongings out of my truck you're not going to need it

tomorrow since you're going to be setting in your air-conditioned hotel room while the rest of us work." *Id.*, Bates 54.

Elite provides the Technicians all cable television parts and equipment needed to perform their jobs. Ex. A & B, ¶ 35.

Elite has typically scheduled the Technicians to work more than 40 hours per week. *Id.*, ¶ 36.

Elite has compensated the Technicians through a "piece rate" pay plan, without paying them overtime wages. *Id.*, ¶ 37.

### III.   ARGUMENT

#### A.   Conditional Certification

The FLSA provides a private right of action to recover damages for violations of its overtime requirement.  207 U.S.C. §§ 207 & 216(b).  The purpose of the FLSA is to "eliminate" unfair labor practices because their existence creates "detriment[] to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," "burdens commerce and the free flow of goods," "constitutes an unfair method of competition," and "leads to labor disputes." 29 U.S.C. § 202(a), (b).

Section 7(a)(1) of the FLSA requires that employers pay "employees" overtime compensation at a rate of at least one and one-half (1½) times the regular rate for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a)(1). Plaintiff alleges that Elite violated the FLSA by misclassifying Technicians as "independent contractors" and thereby fail to pay them regular and overtime compensation in violation of the FLSA.  ECF Doc. # 17, Count 1.

Under § 16(b) of the FLSA, a person is not a member of the class, and their statute of limitations is not tolled, until that person files a consent to be part of the action.  29 U.S.C. § 216(b); *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 168-69 (1989); *Harkins v. Riverboat*

11

*Servs., Inc.,* 385 F.3d 1099, 1101 (7ᵗʰ Cir. 2004) ("The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party.").

Plaintiff seeks authorization to send notice of this lawsuit to similarly situated employees under § 216(b), which provides as follows:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Speed is of the essence in issuing notice: "In FLSA collective actions, potential opt-in plaintiffs do not become parties to a suit until they file written consent with the court. The statute of limitations therefore continues to run on opt-in plaintiffs' claims until they give their consent to join the suit." *Kim v. Capital Dental Tech. Lab, Inc.*, 279 F.Supp.3d 765, 769 (N.D. Ill. 2017). For this reason, Plaintiffs typically seek first stage conditional certification and court-facilitate notice early in the litigation before discovery has commenced.

**B.      Relevant Substantive Law**

Although the merits are not at issue at this early stage, the substantive law may be considered in determining whether Plaintiffs have shown a common plan, policy or practice impacting the workers.

"The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA." *Simpkins v. DuPage Hous. Auth.,* 893 F.3d 962, 964 (7ᵗʰ Cir. 2018) (citing *Vanskike v. Peters,* 974 F.2d 806, 807 (7ᵗʰ Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992)).

Because status as an "employee" for purposes of the FLSA depends on the totality of circumstances *rather than on any technical label*, courts must examine the "economic reality" of the working relationship. *Vanskike,* 974 F.2d at 808 (emphasis added) (citing *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947); *Sec. of Lab. v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987), cert. den., 488 U.S. 898 (1988)).

In *Lauritzen,* the Seventh Circuit identified six "economic reality" factors courts must weigh in determining whether an employee is an employee or an independent contractor:

1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
4) whether the service rendered requires a special skill;
5) the degree of permanency and duration of the working relationship;
6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Lauritzen,* 835 F.2d at 1534-35 (citing *Bartels v. Birmingham,* 332 U.S. 126, 130 (1947) and collecting cases).

## C.    The Two-Tier Analysis

In recognition of the judicial efficiencies and cost-saving benefits of collective actions, "the majority of courts—including this Court—have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Girolamo v. Cmty. Physical Therapy & Assocs.*, 2016 U.S. Dist. LEXIS 90128, *6 (N.D. Ill. July 12, 2016) (internal quotation omitted). At the first stage, known as the "notice" stage, the court determines whether the allegations are sufficient for the court to find that the representative plaintiff and putative class members are "similarly situated." *Id.* To demonstrate that potential opt-in plaintiffs are

13

similarly situated at this stage, the named plaintiff "must make a 'minimal showing' that potential class members are similarly situated." *Dennis v. Greatland Home Health Servs.,* 2020 U.S. Dist. LEXIS 21162, *3 (N.D. Ill. Feb. 7, 2020) (citing *Jirak v. Abbott Labs., Inc.,* 566 F.Supp.2d 845, 847-48 (N.D. Ill. 2008)); *see also Hudgins v. Total Quality Logistics, LLC*, 2016 U.S. Dist. LEXIS 178356, *7 (N.D. Ill. Dec. 23, 2016) (employees across the country who had the same responsibilities and compensation structure were similarly situated for conditional certification purposes). Courts interpret the "similarly situated" requirement "using a 'lenient interpretation.'" *Dennis,* 2020 U.S. Dist. OLEXIS 21162, at *3 (quoting *Jirak, Inc.,* 566 F.Supp.2d at 848 (emphasis added).

Plaintiffs can meet their burden by providing "some evidence in the form of affidavits, declarations, deposition testimony, or other documents of a common policy to which they and other similarly situated employees were subjected." *Boltinghouse v. Abbott Labs., Inc.*, 196 F.Supp.3d 838, 841 (N.D. Ill. 2016) (internal quotation omitted). The relevant issue is whether Plaintiffs and potential opt-in plaintiffs were subjected to a common policy, practice, or plan to deprive them of overtime pay when they worked more than 40 hours per week. *See Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). This District has also considered evidence of similar duties in a misclassification claim. *See, e.g., Kujat v. Roundy's Supermarkets, Inc.,* 2019 U.S. Dist. LEXIS 74149, *8 (N.D. Ill. May 2, 2019). "Potential plaintiffs need not be identically situated, only similarly situated." *Briggs v. PNC Fin. Servs. Grp.,* 2016 U.S. Dist. LEXIS 33703, *5-6 (N.D. Ill. Mar. 16, 2016) (citing *Russell v. Ill. Bell Tel. Co., Inc.,* 721 F.Supp.2d 804, 812 (N.D. Ill. 2010) (citing cases)).

"At the first stage, it is premature to consider whether the putative class would require individualized inquiries." *Montero v. JPMorgan Chase & Co.,* 2017 U.S. Dist. LEXIS 63429,

*21 (N.D. Ill. Mar. 22, 2017); *see also, e.g., Kujat,* 2019 U.S. Dist. LEXIS 74149, at *10-11 ("concerns regarding a lack of common facts among potential collective members and the need for individualized inquiries should be raised at step two, not step one"). Moreover, affirmative defenses—individual or collective— such as the applicability of FLSA exemptions, are not considered at this initial notice stage. *See, e.g.*, *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 990 (N.D. Ill. 2018); *cf. Jirak*, 566 F. Supp. 2d at 849–50 ("the application of an FLSA exemption is an affirmative defense on which Defendant carries the burden of proof") (citations omitted). At this stage, a court "does not 'make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" *Dennis,* 2020 U.S. Dist. LEXIS 21162, at *3 (quoting *Pieksma v. Bridgeview Bank Mortg. Co., LLC,* 2016 U.S. Dist. LEXIS 177177, *4 (N.D. Ill. Feb. 26, 2014) (quoting *Briggs,* 2016 U.S. Dist. LEXIS 33703, at *6).

Once the court determines that the case is appropriate for conditional certification, it may then permit notice to prospective members of the collective. The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. In the absence of timely notice, aggrieved employees could be deprived of the opportunity to participate until after their claims are diminished or extinguished by the passage of time. Because "delaying the notification procedure . . . could have the undesirable effect of preventing potential opt-in plaintiffs from presenting their FLSA claims," the FLSA's broad remedial intent favors early notice to potential plaintiffs. *Larsen v. Clearchoice Mobility*, 2011 U.S. Dist. LEXIS 80899, *7 (N.D. Ill. July 25, 2011).

At the second "final" certification stage, courts consider: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D. Ill. 2004). The second stage begins after "potential plaintiffs have been given a chance to 'opt-in' to the collective action and discovery is complete", allowing courts to "more rigorously review[] whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action." *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) (quoting *Persin v. CareerBuilder, LLC*, 2005 U.S. Dist. LEXIS 29727, *5 (N.D. Ill. Nov. 23, 2005)). Courts may conditionally certify a class even if "[t]he majority of defendants' arguments may indeed support eventual 'decertification' at the second stage." *Bastian v. Apartment Inv. and Mgmt. Co.*, 2007 U.S. Dist. LEXIS 97269, *3 (N.D. Ill. Sept. 17, 2007).

This District emphasizes that the similarly situated standard one is liberal and "'typically results in conditional certification'" of a collective action. *Kujat,* 2019 U.S. Dist. LEXIS 74149, at *6 (quoting *Rottman v. Old Second Bancorp,* 735 F.Supp.2d 988, 990 (N.D. Ill. 2010)).[1]

**D.     This Case Should be Conditionally Certified as it Satisfies the Lenient First-Tier Standard**

Plaintiffs have easily met the recognized "lenient" standard for showing that the Technicians have been subject to a common decision, policy or plan for purposes of § 216(b) notification. Plaintiffs' motion is supported by Elite's own voluminous electronic communications to its Technicians through a WhatsApp communication system, which it uses to supervise and control

---

[1] "To impose a strict standard of proof [at this early stage] would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals of the … FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418, 422 (M.D. Ala. 1991).

the Technicians throughout each workday; through Elite' own emails; and through declarations by Technicians who have worked for Elite in numerous states and localities.

That evidence verifies the same treatment of the Technicians in numerous geographic markets where Elite conducts cable installations. Importantly, that evidence clearly exemplifies Elite's tight control of the Technicians' work, time, speech and behavior, often by use of threats of standard forms of job discipline such suspension of work duties. In sum, Plaintiffs' evidence shows similar treatment of the Technicians as employees, warranting a finding of misclassification.

Further, the evidence clearly shows that the Technicians perform the same primary job duty of installing cable television services, which is an "integral part" of Elite's business. Actually, the evidence shows that they perform Elite's primary service of installing cable television.

Plaintiffs have thus presented ample specific evidence needed for conditional certification in misclassification claims.

**E.    Misclassification Claims Are Routinely Conditionally Certified**

District courts around the nation, including Districts within this Circuit, routinely grant conditional certification in claims alleging misclassification as "independent contractors," including numerous cases involving cable and satellite television installation technicians.  *See, e.g., Jackson v. Synergies3 Tec Servs., LLC,* 2019 U.S. Dist. LEXIS 187848 (E.D. Mo. Oct. 29, 2019) (satellite television installers); *Perry v. Krieger Beard Servs., LLC,* 2018 U.S. Dist. LEXIS 109765, *4-9 (W.D. Ohio Jul. 2, 2018) (satellite television installers); *Hobbs v. Cable Mktg. & Installation of La.,* 290 F.Supp.3d 589, 594-97 (E.D. La. Feb. 6, 2018); *Simmons v. Broadway Home Improvement Inc.,* 2014 U.S. Dist. LEXIS 102420 (S.D. Ind. Jul. 28, 2014) (cable television installers); *Swinney v. AMcomm Telecom., Inc.,* 2013 U.S. Dist. LEXIS 119749 (E.D.

Mich. Aug. 23, 2013) (cable television installers); *White v. Integrated Electronic Techs., Inc.,* 2013 U.S. Dist. LEXIS 83298 (E.D. La. Jun. 13, 2013) (satellite television installation techs); *Meseck v. TAK Commun's., Inc.,* 2011 U.S. Dist. LEXIS 32583 (D. Minn. Mar. 28, 2011) (cable television installers); *Edwards v. Multibrand Corp.,* 2011 U.S. Dist. LEXIS 3460 (D. Minn. Jan. 13, 2011) (satellite television installers); *Kautsch v. Premier Commun's.,* 504 F.Supp.2d 685 (W.D. Mo. Jan. 23, 2007) (satellite television field installation technicians); *Monroe v. FTS USA, LLC,* 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (cable television installers); *Musarra v. Digital Dish, Inc.,* 2008 U.S. Dist. LEXIS 110003 (S.D. Ohio Mar. 24, 2008) (satellite television installers and repairmen); *Balarezo v. NTH Connect Telecom., Inc.,* 2008 U.S. Dist. LEXIS 53102 (N.D. Cal. May 2, 2008) (cable installation technicians);

**F.    Notice**

Plaintiff requests that the Court approve the notice attached hereto as "Exhibit D," which is modeled as closely as possible after the notice recently approved by this Court in *Dennis, et al. v. Greatland Home Health Servs., Inc., et al.,* Case No. 1:19-cv-05427-EEB (N.D. Ill. Feb. 7, 2020), ECF # 29.

As the Supreme Court recognized in *Hoffman-La Roche*, the goal of judicial economy weighs heavily in favor of certification and the issuance of notice to potential class members. 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Id.* "The benefits, however, depend upon employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.* Under the FLSA's collective action provisions, trial courts have the authority to facilitate notice to potential plaintiffs to inform them of an action and allow them an opportunity to opt in. *Id.* at 170-71. Notice should be provided in the early stages. *Id.* at 171.

Prompt notice to potential opt-in plaintiffs is essential because in a representative action under the FLSA, the statute of limitations on an individual's claim is not tolled until that individual files a consent form with the Court. 29 U.S.C. §§ 256(b) & 257. Because of this, courts have moved quickly to certify representative actions and facilitate notice by granting requests for expedited discovery of employee information. *Soler v. G&U, Inc.*, 86 F.R.D. 524, 528-31 (S.D.N.Y. 1980). The earliest possible notice will promote the broad remedial purpose of the FLSA, and promote efficient case management by ensuring that similar claims are combined in one proceeding. *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Kautsch*, at 690.

Plaintiffs further requests that the Court authorize them to disseminate notice to the Technicians at their last-known mailing address and to disseminate notice to them by text message and WhatsApp. Recently, courts have approved such notice methods, and more. *See, e.g., Dennis,* 2020 U.S. Dist. LEXIS 21162, at *8-9 (approving notice by mail, email and text message); *Chen v. Asian Terrace Rest.,* 2020 U.S. Dist. LEXIS 126417, *14-15 (E.D.N.Y. Jul. 17, 2020) (approving notice by mail, email, text message, WhatsApp and WeChat as "reasonable and minimally-invasive); *Altamirano-Santiago v. Better Produce, Inc.,* 2019 U.S. Dist. LEXIS 128099, *11 (C.D. Cal. Jul. 30, 2019) (approving notice by mail, email and WhatsApp). Courts recognize that the same methods of communications commonly used by employers to communicate with workers should be used to disseminate notice of an FLSA collective action. *See, e.g., Goss v. Tyler Traditions, Inc.,* 2019 U.S. Dist. LEXIS 175693, *16 (E.D. Tex. Jul. 22, 2019) (recognizing that courts approve notice by text message when the employer has previously communicated with the workers by text message); *Bhumithanarn v. 22 Noodle Mkt. Corp.,* 2015 U.S. Dist. LEXIS 90616, 11-13 (S.D.N.Y. Jul. 13, 2015) (approving use of notice via text

messages because employer commonly texted workers). As *Chen* recently recognized, "the current public health crisis likewise favors more options." 2020 U.S. Dist. LEXIS 12617, at *15.

A 90-day notice period should be approved in accordance with common practice. *See, e.g., Osterholt v. CorePower Yoga, LLC,* 2017 U.S. Dist. LEXIS 75663, *20-21 (N.D. Ill. May 18, 2017) (approving 90 day opt-in period); *Brooks v. Safety-Kleen Sys.*, 2012 U.S. Dist. LEXIS 117035, *17 (N.D. Ill. Aug. 14, 2012) (same); *Watt v. Fox Rest. Venture, LLC*, 2019 U.S. Dist. LEXIS 26959, *25 (C.D. Ill. Feb. 20, 2019) (recognizing that "[c]ourts routinely approve 90-day opt-in periods").

In furtherance of the notice, Plaintiffs finally requests the Court to order Elite to produce the names, addresses, phone numbers, e-mail addresses, WhatsApp account numbers, and employment dates in a readable electronic format of the class to facilitate notice to potential plaintiffs of this pending lawsuit.

## V.  CONCLUSION

This case is well-suited to conditional collective action certification because of Elite's policy and practice of assigning and controlling the Technicians classified as "independent contractors," working them over 40 hours per week, and failing to pay them overtime.

Accordingly, Plaintiffs respectfully requests that the Court (a) conditionally certify the case to proceed as a collective action; (b) order Elite to identify all of the Technicians classified as "independent contractors" at any time in the last three years; (c) order Elite to provide this information to Plaintiff's counsel within 14 days; and (d) direct the issuance of Plaintiffs' proposed notice, attached hereto as "Exhibit E."

Respectfully submitted,
**WEINHAUS & POTASHNICK**
*s/ Mark Potashnick*
Mark Potashnick, Illinois Bar # 6271083
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

**FORESTER HAYNIE PLLC**
Meredith Black-Mathews
Texas Bar No. 24055180
(admitted *pro hac vice*)
Texas Bar No. 24055180
400 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax
mmathews@foresterhaynie.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on all counsel of record via the Court's

electronic case filing system on the date reflected in the Court's electronic case filing records.


*s/ Mark Potashnick*