UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LECHUGA and SHAMSADIN MUHAMMAD, on behalf of themselves and all similarly situated employees, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-03378-EEB-BWJ |
| v. | ) ) | |
| ELITE ENGINEERING, INC., et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' CONSENT MOTION FOR (1) CERTIFICATION OF
A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES, (2)
APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, (3) PRELIMINARY
APPROVAL OF A CLASS ACTION SETTLEMENT, (4) APPROVAL OF NOTICE TO
PUTATIVE CLAIMANTS, AND (5) SCHEDULING A HEARING FOR FINAL
APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT,
<u>AND MEMORANDUM IN SUPPORT</u>**

Plaintiffs David Lechuga and Shamsudin Muhammad, on behalf of themselves and all others

similarly situated, through their attorneys, with the consent of Defendants Elite Engineering, Inc.,

John Urso and Gina Urso, move the Court for (1) certification of a Fair Labor Standards Act

("FLSA") collective action and Missouri, New York, Ohio and Wisconsin class actions for

settlement purposes, (2) approval of the parties' collective action settlement, (3) preliminary

approval of the parties' class action settlement, (4) approval of notice to the putative claimants,

and (5) scheduling a hearing for final approval of the parties' class action settlement agreement.

A copy of the parties' agreed-upon Settlement and Release Agreement ("Settlement

Agreement"), the proposed Class Notice and the proposed Claim Form are attached hereto as

"Exhibit 1" through "Exhibit 3," respectively. The declarations of Plaintiffs' attorneys Mark

Potashnick and Jay Forester in support of this motion and brief are attached as "Exhibit 4" and

"Exhibit 5," respectively. Plaintiffs incorporate the following Memorandum in Support. The parties have reached a settlement on behalf of all class members. The settlement meets the standards for approval of an FLSA settlement and for granting preliminary approval of a class action settlement.

## MEMORANDUM IN SUPPORT

### Facts and Procedural History

Elite Engineering, Inc. ("Elite") is a cable television installation company. Defendants John and Gina Urso own and operate Elite Engineering, Inc.

Cable television installation technicians (collectively "Technicians") perform Elite's primary business activity of installing cable television. The Technicians work for Elite in various geographic areas as needed to perform Elite's cable television installations.

Named Plaintiffs David Lechuga and Shamsudin Muhammad allege that they were employed by Elite from Elite from about June 2017 to October 2018. Elite denies that it employed both of the Named Plaintiffs and further denies that Plaintiff Muhammad performed any work for Elite.

Plaintiffs alleged that Elite misclassifies the Technicians as "independent contractors," and therefore unlawfully denies them overtime pay. Defendants denies any and all misclassification and asserts that it has paid for Plaintiffs' services in compliance the law.

On June 8, 2020, the original Plaintiff, Lonnie Spells, filed suit against Defendants alleging misclassification of Technicians as "independent contractors," resulting denial of overtime pay. ECF Doc. # 1. Plaintiff Spells asserted such claims on behalf of himself and all other similarly situated Technicians currently and formerly employed by Elite within the applicable recovery periods. Defendants denied those allegations. *Id.*

Elite's staffing agency purported to settle Mr. Spells' individual claims against Defendants

with Mr. Spells directly. Accordingly, on August 7, 2021, Plaintiffs amended the Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) to substitute Named Plaintiffs Lechuga and Muhammad and to assert class claims under the laws of the states in which Plaintiffs Lechuga and Muhammad alleged to have worked for Elite. ECF Doc. # 17. Again, Defendants denied all allegations of misclassification and failure to pay overtime wages and asserted various affirmative defenses. ECF Doc. # 23.

On August 7, 2021, Named Plaintiffs Lechuga and Muhammad moved for conditional certification of the FLSA claim pursuant to 29 U.S.C. § 216(b). ECF Doc. #'s 18-20. After full briefing, the Court granted conditional certification on October 27, 2020. ECF Doc. # 34.

Counsel for the parties then discussed disclosure of data needed to evaluate liability and damages, followed by mediation. The parties jointly moved the Court to stay the claims pending mediation. ECF Doc. # 35. The Court granted that stay on December 3, 2020. ECF Doc. # 36.

Prior to mediation, Elite produced workday data for the Technicians, which Plaintiffs used to further evaluate the claims and to calculate damages.

The parties scheduled mediation for December 30, 2020. However, that mediation was postponed due to the original mediator's personal circumstances.

The parties re-scheduled mediation for January 28, 2020 with an experienced and capable wage and hour and collective / class action mediator, Allen Blair. The parties did not reach a settlement that day. However, they remained engaged with the mediator over the following weeks. Through Mr. Blair's persistent follow-up efforts, the parties were finally able to reach a settlement on February 22, 2021.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiffs, and further deny that, for any purpose other than settling this

matter, this action is appropriate for class or collective treatment. Plaintiffs, on the other hand, assert that Defendants failed to comply with federal and state overtime wage requirements embodied in the FLSA and applicable state wage laws. Class Counsel understands Defendants' position and defenses, but believes Plaintiffs, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. Both sides recognize the uncertainty of the outcome, and appreciate the considerable time and expense associated with further litigation, which motivated settlement.

The attorneys who negotiated on behalf of the Plaintiffs and the class are experienced litigators, and they vigorously represented their clients' respective interests. Potashnick Decl., ¶¶ 1-7; Forester Decl., ¶¶ 5-8.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl., ¶ 9; Forester Decl. ¶ 7.

### Key Settlement Terms

The parties have executed the Settlement Agreement, attached hereto as "Exhibit 1."

The settlement class is defined as:

> All Technicians who performed work for Defendants between June 8, 2017 and December 4, 2021 and all persons who have previously filed with the Court a consent to join the FLSA claim asserted in the Litigation.

Ex. 1, § 1.

The parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and modest service awards for the Named Plaintiffs. All class members who do not opt-out will receive at least $100.00. The remaining settlement funds will be distributed

to class members who submit claims based on the following equitable formula:

(1)    For each Class member, the total number of days worked for Defendants since June 8, 2017 (according to Defendants' pre-mediation disclosures) shall be his or her "Individual Work Days"

(2)    The aggregate of all Individual Work Days among all Class members shall be the "Class Work Days."

(3)    Each Class member's Individual Work Days shall be divided by the Class Work Days to obtain his or her "Payment Ratio."

(4)    Each Class member's Payment Ratio shall be multiplied by the amount of $225,000.00 to calculate his or her Individual Settlement Payment.

(5)    Each Class member's Individual Settlement Payment will be at least $100.00 and all persons who filed a consent to join but were not included in Defendants' pre-mediation disclosures served December 4, 2020 shall receive the minimum payment of $100.00 each.

(6)    The minimum claim rate shall be 30% and the maximum damages claim rate shall be 45%. If less than 30% of damages are claimed, then each claimant's share of the damages shall be proportionately increased so that the total damages claimed are equal to 30% of the damages available for claims. If more than 45% of damages are claimed, then each claimant's share of the damages shall be proportionately reduced so that the total damages claimed are equal to 45% of the damages available for claims.[1]

*Id.*, §§ 2.1(B) & 2.1(E).

Half of each Class member's Individual Settlement Payment claimed shall be classified as wages, subjected to payroll and income taxes, and reported on an IRS Form W-4 and the other half each Class member's Individual Settlement Payment claimed shall be classified as liquidated damages and shall be reported on an IRS Form 1099. *Id.*, § 2.2(A).

The release binding Class Members who do not opt out is limited to wage and hour claims:

---

[1] Plaintiffs were willing to agree to the 45% ceiling on claims given that there would be a 30% floor on claims. Based on their counsel's experience, this compromise may provide extra recovery for claimants.

> Each Class member releases all claims accrued through February 16, 2021, that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims, based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C.§ 201, et. seq., and state wage and hour laws, whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage or overtime pay laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties.

*Id.*, § 3.1(B).

Based on their service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, Named Plaintiffs Lechuga and Muhammad each seek a modest service award. *Id.*, § 2.1(A)(2).

Subject to this Court's approval, Plaintiffs' Counsel will receive fees and litigation costs equal to 40% of the Total Settlement Amount plus their costs incurred totaling $2,892.50. Defendants do not oppose or object to this request for attorneys' fees and costs. *Id.*, § 2.1(A)(3).

Plaintiffs have selected a settlement administrator, CEC Services Group, LLC, who has agreed to perform settlement administration duties in exchange for a fee not exceed $3,800.00 and will be paid from the Total Settlement Amount. *Id.*, § 2.1(A)(5).

A notice of collective action settlement (the "Notice") and claim form ("Claim Form") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement, the Notice and the Claim Form. The parties' proposed Notice should be approved as it explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each class member's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

The Settlement Administrator will send a notice of preliminary approval and settlement to each

class member and each of them will have 60 days after mailing of the notice to submit a claim form, choose to opt-out, or file objections. Class members will also have the opportunity to appear at the final approval hearing to be set by the Court. Ex. 1, § 2.1(B)(6).

## ARGUMENT

### A.    The Preliminary Settlement Approval Process

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Trans Union Corp. Privacy Litig.,* 2008 U.S. Dist. LEXIS 128501, *19-20 (N.D. Ill. Jan. 3, 2008) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003). "The first step is to assess whether a class exists." *Id.*, at *20 (citing *Staton,* 327 F.3d at 952) (citing *Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997)). Then, "the district court must evaluate whether the Proponents met their burden to establish that the settlement is within the range of what will ultimately be found 'fair, reasonable and adequate.'" *Id.*, at *20 (citing *Kessler v. American Resorts Int'l.'s Holiday Network, Ltd.,* 2007 U.S. Dist. LEXIS 84450, *17 (N.D. Ill. Nov. 14, 2007)).

### B.    Class / Collective Action Certification

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23. Subsection (a) of Rule 23(a) requires:

(1)    the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];

(2)    there are questions of law or fact common to the class ["*commonality*"];

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and

(4)    the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b).  In this case, the pertinent requirement is found in subsection (b)(3), which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]."  *Id.*

### Rule 23(a)(1): Numerosity

Plaintiffs' claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of approximately 55 current and former Technicians.  Thus, the class is so numerous that separate joinder of each member is impracticable.  *See, e.g. Mulvania v. Sheriff of Rock Isle. Cnty.,* 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."); *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (even 40 class members "is a sufficiently large group to satisfy Rule 23(a)"); see also Rubenstein, Newberg on Class Actions, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

### Rule 23(a)(2): Commonality

The "commonality" test requires at least one question of law or fact common to each class member.  *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do.").  "[T]he commonality requirement does not require that class members present identical factual situations—what matters is whether there is a common contention whose truth or falsity 'will resolve an issue that is central to the validity of each claim.'"  *Johnson v. Diakon Logs.,* 2020 U.S. Dist. LEXIS 12435, *13 (N.D. Ill. Jan. 23, 2020) (quoting *Chi. Teachers*

*Union, Local No. 1 v. Bd. of Educ. Of City of Ci.*, 797 F.3d 426, 434 (7th Cir. 2015)).

Here, all Technicians' claims arise out of the same legal theory, specifically treatment as employees under the "economic reality test." *See Sec. of Lab. v. Lauritzen ("Lauritzen")*, 835 F.2d 1529, 1534-35 (7th Cir. 1987), cert. den., 488 U.S. 898 (1988) (explaining "economic reality test"). Further, all Technicians' claims are based on common evidence, such as WhatsApp logs, emails, text messages and other communications showing treatment of the Technicians. The same questions of law and fact central to the claims against Defendants include:

  a.   Whether Defendants misclassified the Technicians as "independent contractors;"

  b.   Whether Defendants' treated the Technicians as employees under the "economic realities test;"

  c.   Whether the Technicians' have performed Defendants' primary business activity of installing cable television service;

  d.   Whether Defendants permitted or suffered the Technicians to work overtime; and

  e.   Whether Defendants paid the Technicians overtime wages.

Thus, for settlement purposes, the proposed class members share sufficient commonality.

Moreover, Plaintiffs' claims further satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of installing cable television service, were compensated by the same pay plan, were subjected to similar treatment on the job, and their claims are based on the same legal theory.

### Rule 23(a)(3):  Typicality

The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n. v. City of Chi.,* 7 F.3d 584, 597 (7th Cir. 1993).   Plaintiffs satisfy the typicality requirement when their claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009).   "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."  *De La Fuete v. Stokely-Van Camp,* 713 F.2d 225, 232 (7th Cir. 1983).

The Named Plaintiffs allege that they, just like all of Defendants' other Technicians were misclassified as "independent contractors," and were thus denied overtime wages.  Moreover, the claims depend on key common evidence of Defendants' treatment of the Technicians in the form of WhatsApp logs, emails, text messages and other documents.  In sum, the Named Plaintiffs and class members assert the same claims, based on the same legal theory and common evidence.  For these reasons, the typicality requirement is satisfied.

### Rule 23(a)(4):  Adequacy of Representation

A proposed class must satisfy Rule 23(a)(4)'s adequacy requirement, which involves two inquiries: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011).  To adequately represent the class, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (citation and quotation omitted)).

The Named Plaintiffs have already demonstrated that they will vigorously champion the class members' rights. They sought counsel experienced in wage and hour and misclassification claims, they provided their attorneys evidence to support the claims, they filed an amended complaint on behalf of all of Defendants' Technicians, they obtained conditional certification of the FLSA claim on behalf of all Defendants' Technicians, and they obtained a settlement beneficial to all of the Technicians, not just themselves. Further, Plaintiffs' counsel are experienced wage and hour and class action litigators who will ably conduct the litigation, and have done so through this point. Moreover, the Named Plaintiffs have no interest antagonistic to the putative class members.

**5.      Predominance**

In addition, Plaintiffs contend that the claims satisfy Rule 23(b)(3), in that common questions of law or fact easily predominate over any question of law or fact affecting only individual members of the class. Again, the predominant question for *every* class member will be whether Defendants misclassified him / her as an "independent contractor" under the "economic realities test." *Lauritzen*, 835 F.2d at 1534-35. Moreover, aside from the parties' settlement, that predominant common question would be answered through common evidence.

**6.      Superiority**

Plaintiffs contend that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt-out of the parties' settlement. Counsel for the parties are unaware of any other pending litigation against Defendants entailing the same claim. For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records and opt-in notices previously filed in this litigation, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will

ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented.

## C.     Certification of the FLSA Collective Action

This District recognizes three factors considered in certifying an FLSA collective action: "'(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns.'" *Ford v. U.S. Foods, Inc.,* 2020 U.S. Dist. LEXIS 187022, *5 (N.D. Ill. Oct. 8, 2020) (quoting *Mielke v. Laidlaw Transit, Inc.,* 313 F.Supp.2d 759, 762 (N.D. Ill. 2004)).

Here, all class members held the same job, performed the same primary job duty of installing cable television services for Defendants' customers, they were compensated pursuant to the same pay scales, and common documents show Defendants' treatment of them. This is far more than sufficient to warrant certification of Plaintiffs' FLSA claim for settlement purposes. *See e.g.., Benton v. Deli Mgt.,* 396 F.Supp.3d 1265, 1285 n. 14 (N.D. Ga. 2019) (recognizing that if more-stringent Rule 23 requirements are satisfied, then the "similarly situated" standard of 29 U.S.C. § 216(b) "necessarily" must be satisfied).

## D.     The Court Should Preliminarily Approve the Settlement

"Federal courts favor settlement[.]" *Uhl v. Thoroughbred Tech. & Telecom's.,* 309 F.3d 978, 986 (7th Cir. 2002). "'[T]here is an overriding public interest in favor of settlement' of class actions.'" *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 307 (7th Cir. 1985) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)). "This is true even when the substantive issues of the case 'reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established.'" *Id.* (quoting *Armstrong v. Bd. of Sch. Directors,* 616 F.2d 305, 313

(7th Cir. 1980)). Moreover, the policy favoring settlement is "particularly important" in complex, multi-party litigation which is likely to require substantial court time over a period of years. *In re VMS Ltd. Pship. Sec. Litig.,* 1995 U.S. Dist. LEXIS 8079, *12 (N.D. Ill. Jun. 12, 1995) (citing *In re Four Seasons Sec. Laws Litig.,* 60 F.R.D. 598, 602 W.D. Okla. 1973)); *see also, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. *Id.* The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;
(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, § 11.22, *et seq.*

The Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice of the settlement's terms should be issued to the Class and a formal fairness hearing scheduled. *Id.,* 11.25 at 11-36, 11-37. Thus, at this stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 346 (N.D. Ill. 2010) (citing *Armstrong*, 616 F. 2d at 314).

At the preliminary approval stage, courts consider five factors: "(1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer," (2) "an assessment of the likely complexity, length and expense of continued litigation;" (3) "an evaluation of the amount of opposition to settlement among affected parties;" (4) "the opinion of competent counsel;" and (5) "the stage of the proceedings and amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996)).

Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See, e.g., In re Trans Union Corp. Privacy Litig.,* No. 00 C 4729, 2008 WL 11358136, at *6 (N.D. Ill. Jan. 3, 2008) (preliminary approval inquiry often involves an informal presentation of the parties' proposals to the court). Here, preliminary approval of the Settlement Agreement is clearly warranted.

**Factor 1:** **The Strength of Plaintiffs' Case Compared to the Terms of the Proposed Settlement**

Plaintiffs' claim is supported by substantial evidence, but ultimately that claim may depend

upon persuading a jury to adopt his evidence over Defendants' competing evidence and arguments. Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). Plaintiffs further recognize some risk of denial of class certification and/or decertification of the collective action. Plaintiffs' counsel weighed that risk in negotiating the settlement amount.

Going into mediation, Plaintiffs' counsel calculated $368,375.00 in actual overtime pay damages plus $368,375.00 in liquidated damages, totaling $736,750.00. Thus, Plaintiffs achieved a gross settlement amount equal to about 109% of actual damages. Substantially lesser recoveries have been approved. *See, e.g., Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14) (settlement equal to 2/3rds of actual damages based on $.45 reasonable reimbursement rate per mile); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

**Factor 2: The likely complexity, length and expense of continued litigation**

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. In fact, Plaintiffs' counsel has litigated wage and hour claims for about six years or longer prior to settlement. Potashnick Decl., ¶ 18. As explained above, this litigation focuses on the complex

and fact-intensive multi-factor *Lauritzen* test for employment status. Thus, this litigation was likely to become expensive absent settlement, both to the parties in terms of attorney time and costs and to the Court in terms of deciding difficult and complex issues. Such claims often devolve into a battle of competing testimony and conflicting interpretation of document. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factor 3:        The amount of opposition to settlement among effected parties**

Plaintiffs' counsel are presently unaware of any opposition to the settlement. They have observed the extreme rarity of objections to similar settlements in class and collective action wage and hour litigation. In any event, this factor can be further considered after notice and opportunity to object.

**Factor 4:        The opinion of competent counsel**

Courts place significant weight on the endorsement of experienced class counsel. *In re Mexico Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Settlement Agreement, and this factor favors preliminary approval of the settlement. *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 197 (N.D. Ill. 2018). When evaluated in light of the relevant factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

**Factor 5:        The stage of the proceedings and amount of discovery completed**

Although this claim settled relatively early, counsel for the parties have litigated several similar claims by workers who allege that they were misclassified as "independent contractors," including several claims litigated by each side concerning cable television installation technicians. Thus, the

parties were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages. That data was disclosed, then utilized to evaluate both liability and various damage scenarios. The parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

### Additional Factor for FLSA Collective Action: Existence of *Bona Fide* Dispute

To effect a binding release, a settlement of FLSA claims requires judicial or U.S. Department of Labor approval of FLSA settlements. *Walton v. United Consumers Club,* 786 F.2d 303, 306 (7th Cir. 1986) (recognizing that private settlements of FLSA claims are invalid); *Woods v. Club Cabaret, Inc.,* 2017 U.S. Dist. LEXIS 198896, *14 (C.D. Ill. May 17, 2017) (same).

"A district court should approve an FLSA collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties." *Bainter v. Akram Invs., LLC,* 2018 U.S. Dist. LEXIS 177445, *2 (N.D. Ill. Oct. 9, 2018) (citing *Lynn's Food Stores v. U.S.,* 679 F.2d 1350, 1352-54 (11th Cir. 1982)). "'[A]pproval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements.'" *Hall v. High One Machs., Inc.,* 2016 U.S. Dist. LEXIS 131009, *11 (E.D.N.C. Sept. 26, 2016); *see also Sierra v. Kaiser Found Hosps.,* 2019 U.S. Dist. LEXIS 194964, *22 (S.D. Cal. Nov. 7, 2019) (same).[2]

Here, Plaintiffs alleged that Defendants misclassified the Technicians as "independent contractors," thereby denying them overtime pay. Defendants adamantly deny Plaintiffs' substantive allegations, assert that the Technicians were properly classified as "independent

---

[2] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

contractors," and contend that the Technicians were compensated lawfully. Thus, the claims were actually in dispute.

The parties analyzed, data specific to Plaintiffs' allegations of liability and damages. If a jury agreed with Plaintiffs' allegations about a misclassification of the Technicians, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiffs' attorneys' fees and costs. On the other hand, if a jury agreed with Defendants that the Technicians were properly classified as "independent contractors," they would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

The settlement is fair and reasonable for the same reasons explained above in the Rule 23 preliminary approval analysis.

### E.      Attorney's Fees and Costs Provided in the Settlement are Appropriate

The Settlement Agreement provides that Plaintiffs' counsel will recover their fees from the Settlement Amount. Ex. 1, ¶ 3.2(A). The FLSA, the Missouri Minimum Wage Law, the New York Labor Law, Ohio's overtime pay law and Ohio's Prompt Pay Act, O.R.C. § 4113.15 all contain fee and cost shifting provisions. 29 U.S.C. § 216(b); R.S. Mo. § 290.527; NYLL §§ 663(1); O.R.C. § 4111.10(A); Wis. Stat. §§ 109.03(5) & (6).

The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation"); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to indicate

their rights."). Simply stated, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The Settlement Agreement authorizes an award of fees equal to 40% of the total settlement amount. The Seventh Circuit and this District both recognize that a 40% contingent fee percentage is a within the range of the typical contingent fee. *See, e.g., Gaskill v. Gordon,* 160 F.3d 361, 362-63 (7th Cir. 1988) ("The typical contingent fee is between 33 and 40 percent"); *McDaniel v. Qwest Commun's. Corp.,* 2011 U.S. Dist. LEXIS 154591, *11-12 (N.D. Ill. Aug. 29, 2011) ("the real-world market range for contingent fee cases is 33% to 40%).

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting

*Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983)).

### *Hensley* Factors (2), (3), (9), & (10): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys; and "Undesirability" of the Case.

There were complex issues of law and fact involved such as application of the fact-intensive multi-factor analysis prescribed by the Seventh Circuit in *Lauritzen* to determine whether a worker qualifies as a statutory employee or an independent contractor. Other complex issues include collective action certification, collective action decertification, class action certification, determining the extent of uncompensated overtime work based on incomplete time records, the applicable overtime rates, employer notice, willfulness, and multiple credibility battles. Numerous depositions would have been taken and trial would have may be fact-intensive and costly. I would likely have entailed detailed testimony from numerous witnesses. Regardless of the outcome at trial, post-judgment appeals would be likely. Given the inherent complexities of a wage and hour collective action, the fee requested is more than fair.

Plaintiffs' counsel possess extensive experience in misclassification claims like this, and in all types of wage and hour litigation. Potashnick Decl., ¶¶ 1-7; Forester Decl., ¶ 5. In light of the difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,* 506 U.S. 103, 108 (1992)).

As noted above, given the difficulty and uncertainty of claims alleging misclassification of workers as "independent contractors," the Technicians' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiffs and all other Technicians. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the class. Some class members will receive substantial payments for their alleged uncompensated overtime work. Presuming the maximum claim rate of 45%, the claimants will receive an average of more than $4,000.00 ($101,250.00 available for claims at the maximum claim rate / (55 class members x 45% claim rate) = $4,050.00 average recovery per claimant). And while some class members will receive less than others – based on relatively few work days – no class member will receive less than $100.00.

Moreover, through diligent pursuit of the claims and skillful negotiation, class counsel has provided a successful result for the class and collective by creating a settlement fund. The settlement was achieved through efforts of class counsel and without the necessity of overly prolonged litigation and trial, justifying the fee sought. The settlement delivers a per class member recovery within the realm of results which they could reasonably expect to achieve, assuming a successful trial. The fact that these substantial amounts are available to class members without the uncertainty and burden of trial, and are being delivered through this settlement rather than after years of additional litigation, qualifies the results of this settlement as excellent under any reasonable assessment. "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976). In sum, class counsel respectfully submit that the class and collective could

not have received better representation and the result achieved reflects that fact.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is also consistent with Plaintiffs' Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiffs signed contingency fee agreements with Plaintiffs' Counsel agreeing to fees equaling 40% of the common fund.

### *Hensley* Factors (1) & (4): Time and Labor Expended; and Preclusion of Other Work.

Plaintiffs' counsel's firms combined spent over 205 hours litigating this case with no assurance of any recovery at all and wholly excluding any time that is to be incurred and may be substantial. Potashnick Decl., ¶¶ 13; Forester Decl., ¶ 11. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the named Plaintiffs and by Defendants; successfully moving for conditional certification of the FLSA claim; analyzing Defendants' work data; communicating with the Named Plaintiffs and opt-in Plaintiffs; responding to multiple inquiries by Defendants for informal discovery responses; creating a computerized damages model; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. Potashnick Decl., ¶ 13; Forester Decl., ¶ 11.

Plaintiffs' counsel's lodestar is based hourly billing rate of $500.00, which is within the general range of previously-approved rates, for attorneys with similar experience and practices limited to plaintiffs' wage and hour matters. Potashnick Decl., ¶ 14; Forester Decl., ¶ 10.

Mr. Potashnick has been in private practice for 28 years. Potashnick Decl., ¶ 1. He has been approved at a rate of $500.00 per hour within this Circuit. *See, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (awarding $500.00 per

hour for Mark Potashnick); *compare Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (Ex. 6) (finding Mark Potashnick's hourly rate to be "reasonable" in wage and hour claim) *with Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (Ex. 7) (fee and cost petition seeking $500.00 per hour); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-296-TCB (N.D. Ga. Jan. 28, 2020) (ECF Doc. #'s 139, at 8 (finding reasonable $500.00 per hour rate for Mark Potashick) & 138, at 5 (requesting $500.00 per hour rate for Mark Potashnick); *compare Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmel) (Ex. 8) (awarding all fees sought) *with Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell) (Ex. 9) (seeking fees at rate of $500.00 per hour); *see also, e.g., Ralph v. HAJ, Inc.,* 2021 U.S. Dist. LEXIS 59813, *18 (S.D. Cal. Mar. 29, 2021) (approving Mark Potashnick at rate of $575.00 per hour).

Mr. Forester was recently approved at a rate of $550 per hour and his firm's current hourly billing rate for comparable work for himself of Ms. Mathews is $600 per hour. *See e.g.*, *McKeon v. Integrity Pizza LLC*, et al, Case 18-cv-00932 (D. Colo.); *Doyle v. Be Hurd, Inc., et al.*, Case 3:20-cv-138 (E.D. Tenn.); *see also*, *Chin v. The Tile Shop LLC,* Case No. 13-cv-02969 (D. Minn. 2017) (approving Forester at rate of $480/hour as a senior associate prior to becoming a Partner of FH).[3]

When applying a rate of $500.00 per hour and wholly excluding any time to be incurred, a "lodestar cross-check" reflects a multiplier of 1.55 based on counsel's time spent just through April 5, 2021 ($160,000.00 fees / $102,850.00 lodestar = 1.55). Potashnick Decl., ¶ 13; Forester Decl., ¶ 10. Of course, that multiplier will decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from class

---

[3] *See also*, Forester Decl. ¶ 11 that for purposes of lodestar calculation billings by staff and associate level attorneys have been excluded from the firm's calculation.

members. Such multiplier falls well within the range of multipliers approved in this Circuit. *See, e.g., Ramsey v. Philips N. Am. LLC,* 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.,* 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)).

Notably, through their extensive experience, class counsel were able to efficiently identify, focus and argue the issues, resulting in a favorable resolution. *Id.* The quality and efficiency of class counsel's work on this case was superior and is reflected in the result. Through many hours of fact investigation, evidence review and research, class counsel developed a persuasive case, and during negotiations with Defendants demonstrated that fact. This recovery for the class and collective is a direct result of effective lawyering and the acumen and diligence of class counsel. Such skill should be rewarded. *See J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, 1982 U.S. Dist. Lexis 15261, *16-20 (S.D.N.Y. Sept. 17, 1982).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiffs' counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous Technicians.

> ### *Hensley* Factor (12): Awards in Similar Cases.

As stated above, the Seventh Circuit and this District both recognize that a 40% contingent fee percentage is a within the range of the typical contingent fee. *See, e.g., Gaskill,* 160 F.3d at 362-63; *McDaniel,* 2011 U.S. Dist. LEXIS 154591, at *11-12.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First,

it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiffs' counsel in obtaining relief for all Defendants' Technicians should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## F.    Named Plaintiffs Lechuga and Muhammad Deserve Service Awards

Services awards, also known as "incentive awards," "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001); *Charvat v. Valente,* 2019 U.S. Dist. LEXIS 187225, *32 (N.D. Ill. Oct. 28, 2019). The modest service award sought for Mssrs. Lechuga and Muhammad should be approved because they substantially assisted counsel in achieving this settlement on behalf of the class, and their time and effort are deserving of a service award. They were responsible for taking over as Named Plaintiffs when the staffing agency settled directly with the original Named Plaintiff, Lonnie Spells. They provided ongoing guidance and assistance on numerous occasions to Plaintiffs' counsel. Mrssrs. Lechuga and Muhammad sought and retained experienced counsel, took over as Named Plaintiffs when needed, provided evidence necessary to successfully prosecute the case, and had numerous phone calls and email communications with counsel. Name Plaintiff Lechuga actively participated in the mediation and subsequent settlement negotiations. Therein, Mr. Lechuga advocated for *all* of the Technicians. There is no question that the other Technicians have substantially benefited from the actions of the two Named Plaintiffs. Without their efforts, this

case would not have been further pursued after the purported settlement with Mr. Spells and the settlement would not have been achieved. Potashnick Decl., ¶ 12; Forester Decl., ¶ 9. In light of these efforts, payment of service awards in the amounts reflected in the attached Settlement Agreement are amply justified. Defendants do not oppose the requested service award. *See, e.g., Daluge v. Cont'l. Cas. Co.,* 2018 U.S. Dist. LEXIS 183713, *10-11 (W.D. Wis. Oct. 25, 2018) (recognizing that "district courts in this circuit have awarded incentive fee awards ranging from $5,000.00 to $25,000") (collecting cases); *Furman v. At Home Stores, LLC,* 2017 U.S. Dist. LEXIS 73816, *4-5 (N.D. Ill. May 1, 2017) (approving service award of $10,000.00 to named plaintiff and $5,000.00 to opt-in Plaintiff).

Defendants do not oppose the service awards.

## G.     The Court Should Approve the Proposed Collective Action Class Notice

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the notice of settlement and the claim form, will be mailed to class members at their last known addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement. The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the need to submit a claim form in exchange for enhanced recovery; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiffs' counsel seek and the amount of the proposed service

award to be paid to the named Plaintiffs who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an Order that:

(a)     certifies a class action for purposes of settlement;

(b)     certifies an FLSA collective action for purposes of settlement;

(c)     preliminarily finds that the parties' settlement of the Indiana and Illinois class claims appears to be fair, reasonable, and adequate as to members of the collective action class, subject to any objections that may be raised at the final fairness hearing and final approval of the collective action class settlement by this Court;

(d)     finds that the parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action class,

(e)     grants preliminary approval of the Indiana and Illinois class action settlement;

(f)     grants approval of the FLSA collective action settlement;

(g)     approves as to form and content the parties' proposed notice and claim form as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(h)     orders that each class member be given a full opportunity to file a claim, object to, or opt-out of the Settlement Agreement, and to participate at the final approval hearing;

(i)     schedules a final fairness hearing; and

(j)     awards such further relief as the Court deems equitable and just.

Respectfully submitted,

**WEINHAUS & POTASHNICK**
*s/ Mark Potashnick*
Mark Potashnick, Illinois Bar # 6271083
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

**FORESTER HAYNIE PLLC**
Meredith Black-Mathews
Texas Bar No. 24055180
(admitted *pro hac vice*)
Texas Bar No. 24055180
400 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax
mmathews@foresterhaynie.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

*s/ Mark Potashnick*