```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| David Lechuga and Shamsadin Muhammad, on behalf of themselves and all similarly situated employees | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20 C 3378 |
| Elite Engineering, Inc., et al., | ) ) ) ) | |
| Defendants. | | |

Memorandum Opinion and Order

The named plaintiffs in this action allege on behalf of themselves and others similarly situated that they performed work for defendants as de facto employees of Elite Engineering, but defendants misclassified them as independent contractors. As a result, plaintiffs claim, they were denied overtime pay to which they were entitled under the Fair Labor Standards Act ("FLSA") and parallel laws of Missouri, New York, Ohio, and Wisconsin. Plaintiff Lechuga also asserts individual and class claims under New York law, alleging that defendants failed to provide appropriate wage notices and wage statements.

According to the Amended Complaint, plaintiffs and the class members were cable television installation technicians who performed defendants' primary business activity of installing

cable television in the above-named states. Defendants' answer denies that either named plaintiff was an employee of Elite Engineering; denies that Muhammad performed any work for Elite Engineering at all; and denies that defendants misclassified the members of the FLSA collective and putative class or compensated any of them unlawfully. Defendants also assert various affirmative defenses.

In October of 2020, I granted plaintiffs' motion for conditional certification of the FLSA claim pursuant to 29 U.S.C. § 216(b). I later stayed the case by agreement while the parties exchanged information bearing on liability and damages and engaged in mediation. In an unopposed, "consent" motion, plaintiffs now seek: (1) certification of a Fair Labor Standards Act ("FLSA") collective action and Missouri, New York, Ohio, and Wisconsin class actions for settlement purposes, (2) approval of the parties' collective action settlement, (3) preliminary approval of the parties' class action settlement, (4) approval of notice to the putative claimants, and (5) a hearing for final approval of the class action settlement agreement. The motion is granted as to collective and class certification and is otherwise denied without prejudice for the reasons explained below.

In deciding a motion for preliminary approval of a class action settlement and certification of a settlement class, I must undertake two essential inquiries: First, I must "conduct an

2

independent class certification analysis," giving "heightened attention" to the requirements of Rule 23, given the parties' non-adversarial posture. *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016). Second, I must decide whether the proposed settlement is "within the range of possible approval," as the first of two steps to determine whether the proposed Rule 23 settlement is fair, adequate, reasonable, and not a product of collusion. *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

## A. Class Certification

The parties seek to certify one settlement class defined as:

> All Technicians who performed work for Defendants between June 8, 2017 and December 4, 2021[,] and all persons who have previously filed with the Court a consent to join the FLSA claim asserted in the Litigation.

Mot. at 4. This class, they agree, comprises seventy-five individuals, all of whom have been identified.

District courts have broad discretion to determine whether certification of a class is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Nevertheless, courts must perform a "rigorous analysis" to ensure that each prerequisite of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—is satisfied, as well as one subsection of Rule

3

23(b). *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). In combined actions, i.e., suits alleging both FLSA violations on behalf of a collective and state law violations on behalf of a class, "the question whether a class should be certified under Rule 23(b)(3) will turn—as it always does—on the application of the criteria set forth in the rule." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).

Numerosity: To satisfy Rule 23's numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The proposed class comprises 75 individuals, which is well over the number the Seventh Circuit has found sufficient to satisfy Rule 23(a). *See, e.g. Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). The proposed class meets this criterion.

Commonality: Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must "demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention...capable of classwide resolution—which means that

4

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). This requirement is satisfied in this case because all class members held the same job, were compensated in the same manner, and assert the same legal theory based on the "economic reality test"—which they seek to establish using common evidence. *See* Mot. at 9.

Typicality: "Typicality is closely related to commonality." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 342 (N.D. Ill. 2010) (*citing Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.")). That, too, is the case here: the parties agree that there are seventy-five individuals in the class, and plaintiffs allege that all of them were wrongly classified as independent contractors when the evidence—WhatsApp logs, text messages, and other communications between defendants and technicians—establishes that they were employees based on the "economic reality of the working relationship." *Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017) (internal quotation marks and citation omitted).

5

Adequacy of Representation: Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The adequacy inquiry comprises two parts: "(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), as modified (Sept. 22, 2011). The first prong is satisfied, as the parties propose just one settlement class, and the named plaintiffs' interests are aligned with the interests of the absent class members: their individual claims are typical of the class claims, as the named plaintiffs held the same position and suffered the same injury, based on the same payment scheme, during the same time period as all other class members. No conflicts of interest are apparent.

As for the second prong, there is no question that class counsel are highly experienced in this type of litigation and that they have the resources and expertise to represent the class competently. Nevertheless, their submissions bear the hallmarks of a high-volume law practice, including occasional but significant errors that I presume result from the recycling of materials previously prepared in conjunction with other class settlements. *Compare*, e.g., Settlement Release Agreement, Exh. 1 at 3 (defining

6

"Total Settlement Amount" as "the total payments required of Defendants under this Agreement and for purposes of calculating the Gross Settlement Amount, which shall not exceed $400,000") *with* Notice of Settlement Form, Exh. 2 at 2 (notifying class members that "[t]he proposed settlement obligates Defendants to pay up to a gross settlement amount (referred to in the Settlement Agreement as the 'Maximum Settlement Amount') of $274,971.22."); *and compare* Settlement Release Agreement, Exh. 1 at 3 (providing "Service awards to Named Plaintiff David Lechuga of $5,000.00 and to Named Plaintiff Shamsadin Muhammad of $2,000 each (sic)" *with* Notice of Settlement Form, Exh. 2 at 4 ("The Class Representatives will request the Court to approve a service award of $5,000.00 to be paid to each of them to be paid from the Maximum Payout"). *See also* Potashnick Decl. at ¶ 11 (referring to settlement payments "providing a fixed amount to all delivery drivers and a proportional amount of the remainder to all delivery drivers who file timely claims based on the number of deliveries they performed"); Forester Decl. at caption (naming incorrect defendant). While plaintiffs' counsel are qualified to represent the class, such errors of inattention, if they persist, may cause me to revisit my finding that they are adequate representatives of the class in this case.

  Rule 23(b)(3): Certification under Rule 23(b)(3) is appropriate if the proposed class meets two additional

7

requirements: common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat.* Ass'n, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)). The common question that predominates in this case is whether defendants had a practice of misclassifying the technicians who performed services for them as independent contractors. If this question were tried, a negative answer would eviscerate the class claims, while an affirmative answer would entitle each class member to relief in an individualized amount that can be—and, indeed, has been—calculated based on defendants' records.

The superiority requirement is also satisfied. The parties have provided information concerning the amount to which each class member will be entitled under the settlement (more on that issue shortly). While some class members have damages claims valued in the thousands of dollars, many are closer to $100. While that is

8

more than a nominal recovery to be sure, it is substantially less than the expenses any class member would likely incur to litigate his or her claim on an individual basis. *See Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *7 (N.D. Ill. Oct. 6, 2011) (superiority requirement met where "the cost of litigation would likely outweigh the benefit" of pursuing claims individually).

### B. Preliminary Settlement Approval

"Federal courts naturally favor the settlement of class action litigation," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), as settlement "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (citations omitted). Nevertheless, class settlements require close judicial supervision to ensure that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). *See also Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002) (courts must be attentive to "the danger that the [class] lawyer will sell out the class in exchange for the defendant's tacit agreement not to challenge the lawyer's fee request") (citing cases). Indeed, the Seventh Circuit has "gone so far as to term the district judge in the settlement phase of a class action suit

a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds*, 288 F.3d at 279.

In weighing whether to grant preliminary approval of a proposed settlement, "courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among [a]ffected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT & T Mobility Wireless*, 270 F.R.D. at 346 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). While plaintiffs' discussion of factors 2, 3, and 5 supports their motion for preliminary approval, the record raises red flags with respect to factors 1 and 4.

The first factor is the "most important factor relevant to the fairness of a class action settlement." *Synfuel Techs.*, 463 F.3d at 653 (internal quotation marks and citation omitted). To balance the strength of the plaintiffs' case against the amount offered in a proposed settlement, courts "should begin by 'quantify[ing] the net expected value of continued litigation to the class.'" *Id.* (quoting *Reynolds*, 288 F.3d at 284-85) (alteration in *Synfuel*). Here, plaintiffs assert that the class claims are "supported by substantial evidence," which I assume refers to the

10

"WhatsApp logs, emails, text messages and other communications showing treatment of the Technicians" they reference elsewhere in their motion. Against the strength of this evidence, however, plaintiffs acknowledge that defendants raise non-frivolous defenses; recognize the inherent uncertainties of trial and the expense of continued litigation; and perceive the benefits of compromise. So far so good.

Where things go awry is in plaintiffs' valuation of the class claims in comparison with the value of the proposed settlement. Plaintiffs state that "[g]oing into mediation, Plaintiffs' counsel calculated $368,375.00 in actual overtime pay damages" for the class. Mot. at 15. By plaintiffs' account, this means that "[p]laintiffs achieved a gross settlement amount equal to about 109% of actual damages"—a figure they presumably base on the Total Settlement Amount of $400,000. But the Total Settlement Amount "has barely any connection to the settlement's value to the class." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Indeed, the gross settlement amount of $400,000 includes not only the damages payable to the class, but also attorneys' fees, litigation costs, and administrative expenses. Accordingly, plaintiffs' claim to have obtained a triumphant "109% of actual damages" is misleading, as the amounts they compare shed little light on whether the settlement offers fair and adequate compensation to the class members.

11

Moreover, while the settlement purports to provide $225,000 in class damages, this provision, too, is misleading, as the settlement agreement also includes a provision that, as I read it, caps defendants' actual damages exposure at only 45% of that amount, or $101,250. *See* Settlement Release Agreement, Exh. 1 at § 2.1(A)(1) (allocating "$225,000 as and for damages"); *but see id*. at § 2.1(E) ("the maximum damages claim rate shall be 45% .... If more than 45% of damages are claimed, then each claimant's share of the damages shall be proportionately reduced so that the total damages claimed are equal to 45% of the damages available for claims."). Accordingly, the maximum amount actually available to the class as damages is just $101,250, or about 27.5% of the actual overtime damages that plaintiffs' counsel assessed as owing based on defendants' records. That is a far cry from the 109% that plaintiffs' counsel claim, and lower than all but the very lowest end of the range of percentages deemed adequate in the cases they cite. *See* Mot. at 15 (citing *Jimenez v. Pizzerias,* LLC, 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14) (approving settlement equal to 2/3rds of actual damages); *Selk v. Pioneers Mem. Healthcare Dist*., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (approving settlement fund amounting to 26% to 50% of maximum recovery); *Jones v. Agilysis, Inc.*, 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (approving "non-reversionary settlement constitut[ing] between 30% to 60% of recoverable

damages"); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (approving settlement of "at least 50% of the damages Class Members could seek").

The attorneys' fees provided in the proposed settlement are inappropriate for similar reasons. The settlement allocates $160,000, or 40% of the $400,000 Total Settlement Amount, to attorneys' fees. Yet, "[t]he law is clear that fees paid to lead and additional class counsel are not considered a 'value' to the class, as counsel should well know." *Kaufman v. Am. Express Travel Related Servs.*, Co., No. 07-CV-1707, 2016 WL 806546, at *11 (N.D. Ill. Mar. 2, 2016) (citing *Pearson* 772 F.3d at 781), *aff'd sub nom. Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276 (7th Cir. 2017). Accordingly, when attorneys' fees are calculated as a percentage of the recovery obtained through a class settlement, "the Court must deduct costs that do not directly benefit the class from the settlement amount when determining the reasonableness of the fee." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 199 (N.D. Ill. 2018). As noted above, the maximum value of the proposed settlement *to the class* appears to be $101,250—less than the $160,000 it allocates to its attorneys. *See* Settlement Release Agreement at § 2.1(A)(3). Counsel offer no justification or authority for an award of attorneys' fees in excess of the total recovery available to the class.

13

I also have serious reservations about the proposed claims process, as well as about the manner in which payments are calculated and distributed. In particular, I am concerned that the parties' agreement requires class members to submit claim forms to obtain any recovery at all. Although "there is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011), it is hard to see the purpose of such forms in this case (if not to reduce the likely number of claims), since both sides appear to know exactly who is in the seventy-five-member class and how many hours of unpaid overtime each class member worked. This is not a case in which class members number in the hundreds of thousands or millions and may have different types of claims or no claim at all. *Cf. e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288(DLC), 2004 WL 2591402, at *12 (S.D.N.Y. Nov. 12, 2004) (claim form required of class members was "necessary in order for a fair distribution of the settlement proceeds," since "merely holding securities" did not entitle notice recipients to payment).

It is true that individuals wishing to be part of the FLSA collective must opt *in* to participate in the settlement of the federal claim, while those wishing to be part of a Rule 23 class will be deemed to participate in the settlement of their state claim unless they opt *out*. *See* 29 U.S.C.A. § 216 ("No employee

14

shall be a party plaintiff to [an FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.") But it does not follow that the affirmative act of returning a claim form is required to receive any payment at all. Instead, the notice sent to the individuals the parties have identified as eligible to assert federal and state claims can inform them that they have "two binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and not participate in the state-law claims." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 978 (7th Cir. 2011). The notice can inform them, for example, that if they take no action by a certain date, they will be deemed to have elected to participate only in the relevant state settlement and will: a) receive payment in an amount the parties have negotiated based on the worker's unpaid hours (which will be identified in the notice); and b) release only state claims arising out of the challenged practice. Alternatively, the notice could inform them, they may opt *in* to the FLSA settlement by returning a claim form, in which they may also elect to opt *out* of the state settlement, and can identify the specific payment amount each option entails, as well as the scope of the corresponding release.[1] Such a claims procedure strikes me as no

---

[1] Naturally, defendants wish for the broadest possible release at the lowest possible cost, while plaintiffs wish for the greatest

15

more complex or difficult to administer than the proposed settlement agreement's sliding scale based on claim rates.

Moreover, the sliding scale itself reinforces my sense that the claims process is designed to discourage, rather than encourage, the filing of claims. Unlike in *Schulte*, where the fact that the defendant's "total monetary payment to the settlement fund" was the same regardless of the claim rate, the distribution structure of the proposed settlement, coupled with the requirement that individuals who wish to participate only in the Rule 23 class must nevertheless return a claim form to obtain payment, raises "concerns that the claims process is designed to limit the 'take rate' of the Class Members." *Schulte* 805 F. Supp. 2d at 591. Solidifying this impression is that the proposed settlement provides that any unclaimed damages revert to defendants. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) ("A cumbersome claims process is particularly suspect in the case of a reversionary settlement, that is, a settlement under which the defendant recaptures unclaimed funds") (citing *Schulte* 2010 WL

---

possible recovery for the least possible cost. Nothing prevents the parties from negotiating differentiated payments to offer greater recovery to plaintiffs willing to settle all claims in return for a broad release and lesser recovery to plaintiffs who, either by taking no action or by indicating their desire to opt out of the state settlement, preserve one of their claims. Of course, an individual who both expresses an intent to opt *out* of the state settlement and declines to indicate an intent to opt *in* to the federal settlement will preserve both claims and will be entitled to no payment.

8816289, at *5 and *Pearson*, 772 F.3d at 783. Indeed, the Seventh Circuit instructs that "[m]oney not claimed by class members should be used for the class's benefit to the extent that is feasible, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013), and nothing in the parties' submissions suggests that it is infeasible to do so here.

For the foregoing reasons, plaintiffs' consent motion is granted as to class certification but is denied as to approval of the collective action settlement; denied as to preliminary approval of the class settlement; denied as to approval of notice; and denied as to the request for hearing.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 10, 2021