UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LECHUGA and SHAMSADIN MUHAMMAD, on behalf of themselves and all similarly situated employees, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:20-cv-03378-EEB-BWJ |
| v. | ) ) ) | |
| ELITE ENGINEERING, INC., et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE, AND MEMORANDUM IN SUPPORT**

Plaintiffs David Lechuga and Shamsudin Muhammad, on behalf of themselves and all others similarly situated, through their attorneys, with the consent of Defendants Elite Engineering, Inc., John Urso and Gina Urso, move the Court for final approval of the parties' class action settlement and dismissal with prejudice.

A copy of the parties' Amended Settlement and Release Agreement ("Amended Settlement") and the proposed class notice ("the Notice") are attached hereto as "Exhibit 1" and "Exhibit 2," respectively. The declarations of Plaintiffs' attorneys, Mark Potashnick and Jay Forester, in support of this motion and brief are attached as "Exhibit 3" and "Exhibit 4," respectively.

**MEMORANDUM IN SUPPORT**

**I.      FACTS AND PROCEDURAL HISTORY**

Elite Engineering, Inc. ("Elite") is a cable television installation company. Defendants John and Gina Urso own and operate Elite Engineering, Inc.

Cable television installation technicians (collectively "Technicians") perform Elite's primary business activity of installing cable television. The Technicians work for Elite in various

geographic areas as needed to perform Elite's cable television installations.

Named Plaintiffs David Lechuga and Shamsudin Muhammad allege that they were employed by Elite from about June 2017 to October 2018. Elite denies that it employed both of the Named Plaintiffs and further denies that Plaintiff Muhammad performed any work for Elite.

Plaintiffs alleged that Elite misclassifies the Technicians as "independent contractors," and therefore unlawfully denies them overtime pay. Defendants deny any and all misclassification and assert that they have paid for Plaintiffs' services in compliance with the law.

On June 8, 2020, the original Plaintiff, Lonnie Spells, filed suit against Defendants alleging misclassification of Technicians as "independent contractors," and resulting denial of overtime pay. ECF Doc. # 1. Plaintiff Spells asserted such claims on behalf of himself and all other similarly situated Technicians currently and formerly employed by Elite within the applicable recovery periods. Defendants denied those allegations. *Id.*

Elite's staffing agency purported to settle Mr. Spells' individual claims against Defendants with Mr. Spells directly. Accordingly, on August 7, 2021, Plaintiffs amended the Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) to substitute Named Plaintiffs Lechuga and Muhammad and to assert class claims under the laws of the states in which Plaintiffs Lechuga and Muhammad alleged to have worked for Elite. ECF Doc. # 17. Again, Defendants denied all allegations of misclassification and failure to pay overtime wages and asserted various affirmative defenses. ECF Doc. # 23.

On August 7, 2020, Named Plaintiffs Lechuga and Muhammad moved for conditional certification of the FLSA claim pursuant to 29 U.S.C. § 216(b). ECF Doc. #'s 18-20. After full briefing, the Court granted conditional certification on October 27, 2020. ECF Doc. # 34.

Counsel for the parties then discussed disclosure of data needed to evaluate liability and

FP 36903746.1

2

damages, followed by mediation. The parties jointly moved the Court to stay the claims pending mediation. ECF Doc. # 35. The Court granted that stay on December 3, 2020. ECF Doc. # 36.

Prior to mediation, Elite produced workday data for the Technicians, which Plaintiffs used to further evaluate the claims and to calculate damages.

The parties scheduled mediation for December 30, 2020. However, that mediation was postponed due to the original mediator's personal circumstances.

The parties rescheduled mediation for January 28, 2021 with an experienced and capable wage and hour and collective / class action mediator, Allen Blair. The parties did not reach a settlement that day. However, they remained engaged with the mediator over the following weeks. Through Mr. Blair's persistent follow-up efforts, the parties were finally able to reach a settlement on February 22, 2021.

On February 4, 2022, the Court (1) preliminarily found that the parties' class action settlement appears to be fair, reasonable and adequate subject to any objections and final approval, (2) found that the parties FLSA collective action settlement appears to constitute a fair and reasonable resolution of a bona fide dispute between the parties, (3) approved the parties notice of settlement, and (4) scheduled a final fairness hearing for 11:00 a.m. on May 20, 2022. ECF Doc. # 53.

Despite continuing to pursue these settlement efforts, Defendants continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiffs, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective treatment. Plaintiffs, on the other hand, assert that Defendants failed to comply with federal and state overtime wage requirements embodied in the FLSA and applicable state wage laws. Class counsel understands Defendants' position and defenses, but believes Plaintiffs, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. Still, both

FP 36903746.1

sides recognize the uncertainty of the outcome, and appreciate the considerable time, expense and risk associated with further litigation, which motivated settlement.

The attorneys who negotiated on behalf of the Plaintiffs and the Class are experienced litigators, and they vigorously represented their clients' respective interests. Potashnick Decl., ¶¶ 1-7; Forester Decl., ¶¶ 5-8. They believe that the settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues. The value of settlement considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl., ¶ 9; Forester Decl. ¶ 7.

## II. KEY SETTLEMENT TERMS

The parties have executed the Amended Settlement, attached hereto as "Exhibit 1."

The settlement Class is defined as:

> All Technicians who performed work for Defendants between June 8, 2017 and December 4, 2021 and all persons who have previously filed with the Court a consent to join the FLSA claim asserted in the Litigation.

Ex. 1, § 1.

The parties agreed to settle all putative Class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative Class, attorneys' fees, litigation costs, administration costs and modest service awards for the Named Plaintiffs. All Class members who do not opt-out will receive at least $100.00. The remaining settlement funds will be distributed to Class members based on the following equitable formula:

(1) For each Class member, the total number of days worked for Defendants since June 8, 2017 (according to Defendants' pre-mediation disclosures) shall be his or her "Individual Work Days."

(2) The aggregate of all Individual Work Days among all Class members shall be the "Class Work Days."

  (3)  Each Class member's Individual Work Days shall be divided by the Class Work Days to obtain his or her "Payment Ratio."

  (4)  Each Class member's Payment Ratio shall be multiplied by the amount of $154,200.00 to calculate his or her Individual Settlement Payment.

  (5)  The funds attributable to any uncashed checks will be redistributed to other Class members.

The parties emphasize that there will be no claims process and any remaining funds attributable to uncashed checks will be redistributed. Therefore, all net funds recovered for the Class will be paid to Class members.

### III. RESULT OF THE SETTLEMENT NOTICE PROCESS

The Court-approved notice of settlement was mailed to all Class members on February 10, 2022. Among other information, the notice provided each class member the dollar amount of his or her net recovery from the settlement. Each Class member was provided 60 days, through April 12, 2022, to object to the settlement or exclude themself from the settlement. That deadline passed with no objection or exclusion. Further, there has been no untimely objection or exclusion.

### IV. ARGUMENT

The parties believe they have agreed to a settlement that constitutes a fair and reasonable resolution of the claims, considering the time, expense and risk of further litigation. That determination is based on their counsel's extensive experience in resolving similar class claims.

**A. The Court Should Grant Final Settlement Approval**

District court review of a class action settlement proposal is a two-step process. *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998). "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Id.* The purpose of the first step to ascertain whether there is any reason

FP 36903746.1

5

to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Id.* (citing Manual for Complex Litigation § 1.46, at 53-55 (West 1977)). If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard. *Id.*

The Court previously issued preliminary approval, Court-approved notice was disseminated, and this litigation is now at the final certification stage. ECF Doc. # 53.

At this stage, courts in this circuit consider the following factors:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. . . . The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014). Here, all such factors favor final approval of the parties' class action settlement.

"Federal courts favor settlement[.]" *Uhl v. Thoroughbred Tech. & Telecom's.*, 309 F.3d 978, 986 (7th Cir. 2002). "'[T]here is an overriding public interest in favor of settlement' of class actions.'" *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 307 (7th Cir. 1985) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)). "This is true even when the substantive issues of the case 'reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established.'" *Id.* (quoting *Armstrong,* 616 F.2d at 313). Moreover, the policy favoring settlement is "particularly important" in complex, multi-party litigation which is likely to require substantial court time over a period of years. *In re VMS Ltd. P'ship. Sec. Litig.,* 1995 U.S.

Dist. LEXIS 8079, *12 (N.D. Ill. Jun. 12, 1995) (citing *In re Four Seasons Sec. Laws Litig.,* 60 F.R.D. 598, 602 (W.D. Okla. 1973)); *see also, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

### Factor 1: The Strength Of Plaintiffs' Case Compared To The Terms Of The Proposed Settlement

Plaintiffs' claim is supported by substantial evidence, but ultimately that claim may depend upon persuading a jury to adopt his evidence over Defendants' competing evidence and arguments. Indeed, "it is virtually impossible to predict with certainty which testimony would be credited…". *In re Warner Comm'ns. Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). Plaintiffs further recognize some risk of denial of class certification and/or decertification of the FLSA collective action. Plaintiffs' counsel weighed that risk in negotiating the settlement amount.

Going into mediation, Plaintiffs' counsel calculated $368,375.00 in actual overtime pay damages plus $368,375.00 in liquidated damages, totaling $736,750.00. Thus, Plaintiffs achieved a gross settlement amount equal to about 75% of actual damages ($275,000.00 recovery / $368,375.00 actual damages = 75%). The net amount available to the Plaintiffs after fees, costs, service award and administration will be $154,200.00, all of which will be paid to the Class. That equates to a recovery of about 42% of the maximum amount of actual damages. Lesser recoveries have been approved. *See, e.g., Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14) (settlement, including fees and costs, equal to 2/3rds of actual damages based on $.45 reasonable reimbursement rate per mile).

**Factor 2:     The Likely Complexity, Length And Expense Of Continued Litigation**

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. In fact, Plaintiffs' counsel has litigated wage and hour claims for about six years or longer prior to settlement. Potashnick Decl., ¶ 9. As explained above, this litigation focuses on the complex and fact-intensive multi-factor *Lauritzen* test for employment status. Thus, this litigation was likely to become expensive absent settlement, both to the parties in terms of attorney time and costs and to the Court in terms of deciding difficult and complex issues. Such claims often devolve into a battle of competing testimony and conflicting interpretation of document. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

**Factors 3 & 4:     The Amount Of Opposition To Settlement Among Class Members And The Reaction Of Class Members To The Settlement**

After dissemination of the Court-approved notice, including informing class members of the dollar amounts of their respective shares of the recovery (prior to any re-distribution), no class member opted out, and no class member objected to the settlement or any of its terms. That result strongly indicates a positive reaction by the class.

**Factor 5:     The Opinion Of Competent Counsel**

Courts place significant weight on the endorsement of experienced class counsel. *In re Mexico Money*, 164 F. Supp. 2d at 1020, 1019 (N.D. Ill. 2000). Counsel for both sides fully support the Amended Settlement, and this factor favors preliminary approval of the settlement. *Leung v. XPO Logistics, Inc.,* 326 F.R.D. 185, 197 (N.D. Ill. 2018). When evaluated in light of the relevant factors,

the proposed settlement is fair, reasonable, and adequate and should be approved.

**Factor 6:** **The Stage Of The Proceedings And Amount Of Discovery Completed**

Although this claim settled relatively early, counsel for the parties have litigated several similar claims by workers who allege that they were misclassified as "independent contractors," including several claims litigated by each side concerning cable television installation technicians. Thus, the parties were able to quickly and efficiently identify the critical data needed to both evaluate the claims and calculate damages. That data was disclosed, then utilized to evaluate both liability and various damage scenarios. The parties were also able to laser-focus their settlement efforts. Thus, both sides understood the relevant evidence prior to settlement, and efficiently achieved settlement without additional involvement by this Court. Such achievement warrants settlement approval.

**B.** **Attorney's Fees And Costs Provided In The Settlement Are Appropriate**

The Amended Settlement provides that Plaintiffs' counsel will recover their fees from the Settlement Amount. Ex. 1, ¶ 3.2(A). The FLSA, the Missouri Minimum Wage Law, the New York Labor Law, Ohio's overtime pay law and Ohio's Prompt Pay Act, O.R.C. § 4113.15 all contain fee and cost shifting provisions. 29 U.S.C. § 216(b); R.S. Mo. § 290.527; NYLL §§ 663(1); O.R.C. § 4111.10(A); Wis. Stat. §§ 109.03(5) & (6).

The Seventh Circuit recognizes that the purpose of fee shifting is to "assure competent representation for plaintiffs" and to enable plaintiffs to vindicate their rights. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 643 (7th Cir. 2011) (quoting *In re Cont'l. Ill. Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)) (purpose of fee-shifting is to assure competent representation); *Kovacs v. U.S.,* 739 F.3d 1020, 1027 (7th Cir. 2014) (recognizing that fee-shifting serves "an important public-interest function … by making it possible for persons without means to bring suit to indicate their rights."). Simply stated, fee awards to counsel further the remedial goals of the FLSA of

protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir. 1999). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The Amended Settlement authorizes an award of fees *and litigation costs* equal to less than 40% of the total settlement amount ($108,000.00 fee and litigation cost recovery / $275,000.00 gross recovery = 39.27%). The Seventh Circuit and this District both recognize that a 40% contingent fee percentage is within the range of the typical contingent fee. *See, e.g., Gaskill v. Gordon,* 160 F.3d 361, 362-63 (7th Cir. 1988) ("The typical contingent fee is between 33 and 40 percent"); *McDaniel v. Qwest Commun's. Corp.,* 2011 U.S. Dist. LEXIS 154591, *11-12 (N.D. Ill. Aug. 29, 2011) (the real-world market range for contingent fee cases is 33% to 40%).

To ensure a fee award is reasonable, this Circuit considers "the *Hensley* factors:"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 544 & n. 1 (7th Cir. 2009) (quoting

*Hensley v. Eckerhart,* 461 U.S. 424, 430 n.3 (1983)).

### *Hensley* Factors (2), (3), (9), & (10): Novelty And Difficulty Of The Questions Presented; Skill, Experience, Reputation, And Ability Of The Attorneys; And "Undesirability" Of The Case.

There were complex issues of law and fact involved such as application of the fact-intensive multi-factor analysis prescribed by the Seventh Circuit in *Sec'y. of Lab. v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987), to determine whether a worker qualifies as a statutory employee or an independent contractor. Other complex issues include collective action certification, collective action decertification, class action certification, determining the extent of uncompensated overtime work based on incomplete time records, the applicable overtime rates, employer notice, willfulness, and multiple credibility battles. Numerous depositions would have been taken and trial would have been fact-intensive and costly. It would likely have entailed detailed testimony from numerous witnesses. Regardless of the outcome at trial, post-judgment appeals would be likely. Given the inherent complexities of a wage and hour collective action, the fee requested is more than fair.

Plaintiffs' counsel possess extensive experience in misclassification claims like this, and in all types of wage and hour litigation. Potashnick Decl., ¶¶ 3-7; Forester Decl., ¶¶ 5-6. In light of the difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Hensley* factors (2), (3), (9) and (10) all strongly support Plaintiffs' counsels' requested fee.

### *Hensley* Factors (5) & (8): Amount Involved And Results Obtained; And Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436; *Robinson v. Perales,* 894 F.3d 818, 835 (7th Cir. 2018) (following *Hensley* and *Farrar v. Hobby,*

506 U.S. 103, 108 (1992)).

As noted above, given the difficulty and uncertainty of claims alleging misclassification of workers as "independent contractors," the Technicians' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and subsequent negotiations is a very successful result for Plaintiffs and all other Technicians. The total settlement amount is the result of good faith, but contentious, arm's-length negotiation and represents an excellent result for the Class. Some Class members will receive substantial payments for their alleged uncompensated overtime work. The Plaintiffs will receive an average of $2,056.00 after fees, costs and service awards ($154,200.00 / 75 Class members = $2,056.00 net recovery per Class member). While some Class members will receive less than others – based on relatively fewer workdays – no Class member will receive less than $100.00.

Moreover, through diligent pursuit of the claims and skillful negotiation, Class counsel has provided a successful result for the Class and collective by creating a settlement fund. The settlement was achieved through efforts of Class counsel and without the necessity of overly prolonged litigation and trial, justifying the fee sought. The settlement delivers a per class member recovery within the realm of results which they could reasonably expect to achieve, assuming a successful trial. The fact that these substantial amounts are available to Class members without the uncertainty and burden of trial, and are being delivered through this settlement rather than after years of additional litigation, qualifies the results of this settlement as excellent under any reasonable assessment. "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.,* 70 F.R.D. 622, 629 (D. Kan. 1976). In sum, Class counsel respectfully submit that the Class members could not

FP 36903746.1

12

have received better representation and the result achieved reflects that fact.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is also consistent with Plaintiffs' counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the named Plaintiffs signed contingency fee agreements with Plaintiffs' counsel agreeing to fees equaling less than 40% of the common fund.

### *Hensley* Factors (1) & (4): Time And Labor Expended; And Preclusion Of Other Work.

Plaintiffs' counsel's firms combined spent over 200 hours litigating this case with no assurance of any recovery at all and wholly excluding any time that is to be incurred and may be substantial. Potashnick Decl., ¶ 13; Forester Decl., ¶ 11. This includes time spent investigating the facts, preparing and filing pleadings; reviewing documents produced by the named Plaintiffs and by Defendants; successfully moving for conditional certification of the FLSA claim; analyzing Defendants' work data; communicating with the Named Plaintiffs and opt-in Plaintiffs; responding to multiple inquiries by Defendants for informal discovery responses; creating a computerized damages model; researching and drafting a mediation statement; participating in the mediation; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. *Id.*

Plaintiffs' counsel's lodestar is a based on an hourly billing rate of $500.00, which is within the general range of previously-approved rates, for attorneys with similar experience and practices limited to plaintiffs' wage and hour matters. Potashnick Decl., ¶ 14; Forester Decl., ¶ 10.

Mr. Potashnick has been in private practice for 29 years. Potashnick Decl., ¶¶ 3, 14. He has been approved at a rate of $500.00 per hour within this Circuit. *See, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (awarding $500.00 per

hour for Mark Potashnick); *Hidalgo v. Quality Huts Midwest, LLC,* AAA Case No. 01-20-0020-0139 (Gilbert Oct. 27, 2021) (Ex. 5), at 10 (finding $500.00 per hour reasonable for Chicago-area arbitrations); *compare Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 28, 2020) (ECF No. 24) (Ex. 6) (finding Mark Potashnick's hourly rate to be "reasonable" in wage and hour claim) *with Kirby v. Caudill Ventures, LLC,* Case No. 7:19-cv-170-JCD (E.D.N.C. Aug. 20, 2020) (ECF No. 21) (Ex. 7) (fee and cost petition seeking $500.00 per hour); *Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-296-TCB (N.D. Ga. Jan. 28, 2020) (ECF Doc. #'s 139, at 8 (finding reasonable $500.00 per hour rate for Mark Potashick) & 138, at 5 (requesting $500.00 per hour rate for Mark Potashnick); *compare Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmel) (Ex. 8) (awarding all fees sought) *with Nelson v. PJ Cheese, Inc.,* AAA Case No. 01-19-0001-5314 (Kimmell) (Ex. 9); *see also, e.g., Ralph v. HAJ, Inc.,* 2021 U.S. Dist. LEXIS 59813, *18 (S.D. Cal. Mar. 29, 2021) (approving Mark Potashnick at rate of $575.00 per hour); *Pannell v. Parts Authority, LLC,* AAA Case No. 01-20-0009-6223 (Weinstock Oct. 25, 2021) (Ex. 10), at 3-4 (approving Mark Potashnick at the *Laffey* Matrix rate of $919.00 per hour).

Mr. Forester was recently approved at a rate of $600.00 per hour and his firm's current hourly billing rate for comparable work for himself is $600.00 per hour. *Lewis et al. v. Lucky 2 Logistics, LLC et al.*, Case No. 2:19-cv-323 (E.D. Wis.) and *Burton et al. v. AMNJ Enterprises, Inc.* et al., Case 2:19-cv-164, (E.D. Wis.); *see also*, *Estes v. Willis & Brock Foods, Inc. et al*, Case 6:18-cv-197 (E.D. Ky.)(recently approving hourly rate of $600.00) and *Chin v. The Tile Shop LLC,* Case No. 13-cv-02969 (D. Minn. 2017) (approving Forester at rate of $480.00/hour as a senior associate prior to becoming a partner of FH).[1]

When applying a rate of $500.00 per hour and wholly excluding any time to be incurred, a

---

[1] *See also*, Forester Decl. ¶ 11 that for purposes of lodestar calculation billings by staff and associate level attorneys have been excluded from the firm's calculation.

"lodestar cross-check" reflects a multiplier of less than 1 based on counsel's time spent through April 22, 2022 ($108,000.00 fee and cost recovery - $2,950 costs = $105,050.00 fees recovered / $130,600.00 lodestar (261.2 hours x $500.00 per hour) = 0.81 multiplier). Of course, that multiplier will continue to decline as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from Class members. Such multiplier falls well within the range of multipliers approved in this Circuit. *See, e.g., Ramsey v. Philips N. Am. LLC,* 2018 U.S. Dist. LEXIS 226672, *12 (S.D. Ill. Oct. 15, 2018) ("in risky litigation such as this, lodestar multiplier can be reasonable in a range between 2 and 5") (quoting *Spano v. Boeing Co.,* 2016 U.S. Dist. LEXIS 161078, *11 (S.D. Ill. Mar. 31, 2016)).

Notably, through their extensive experience, Class counsel were able to efficiently identify, focus and argue the issues, resulting in a favorable resolution. The quality and efficiency of Class counsel's work on this case was superior and is reflected in the result. Through many hours of fact investigation, evidence review and research, Class counsel developed a persuasive case, and during negotiations with Defendants demonstrated that fact. This recovery for the Class and collective is a direct result of effective lawyering and the acumen and diligence of Class counsel. Such skill should be rewarded. *See J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, 1982 U.S. Dist. Lexis 15261, *16-20 (S.D.N.Y. Sept. 17, 1982).

This work naturally precluded counsel from pursuing other litigation opportunities. In addition, Plaintiffs' counsel will be required to expend significant additional time connected with administering the settlement, including communicating with numerous Technicians.

### *Hensley* Factor (12): Awards In Similar Cases.

As stated above, the Seventh Circuit and this District both recognize that a 40% contingent fee percentage is within the range of the typical contingent fee. *See, e.g., Gaskill,* 160 F.3d at 362-63;

*McDaniel,* 2011 U.S. Dist. LEXIS 154591, at *11-12. Plaintiffs' counsel seeks less than 40% for *both* fees and costs.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiffs' counsel in obtaining relief for all Defendants' Technicians should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## C.  Named Plaintiffs Lechuga And Muhammad Deserve Service Awards

Services awards, also known as "incentive awards," "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001); *Charvat v. Valente,* 2019 U.S. Dist. LEXIS 187225, *32 (N.D. Ill. Oct. 28, 2019). The modest service award sought for Messrs. Lechuga and Muhammad should be approved because they substantially assisted counsel in achieving this settlement on behalf of the Class, and their time and effort are deserving of a service award. They were responsible for taking over as Named Plaintiffs when the staffing agency settled directly with the original Named Plaintiff. They provided ongoing guidance and assistance on numerous occasions to Plaintiffs' counsel. Messrs.

Lechuga and Muhammad sought and retained experienced counsel, took over as Named Plaintiffs when needed, provided evidence necessary to successfully prosecute the case, and had numerous phone calls and email communications with counsel. Name Plaintiff Lechuga actively participated in the mediation and subsequent settlement negotiations. Therein, Mr. Lechuga advocated for *all* of the Technicians. There is no question that the other Technicians have substantially benefited from the actions of the two Named Plaintiffs. Without their efforts, this case would not have been pursued and the settlement would not have been achieved. Potashnick Decl., ¶ 12. In light of these efforts, payment of service awards in the amounts reflected in the attached Amended Settlement are amply justified. Defendants do not oppose the requested service award. *See, e.g., Daluge v. Cont'l. Cas. Co.,* 2018 U.S. Dist. LEXIS 183713, *10-11 (W.D. Wis. Oct. 25, 2018) (recognizing that "district courts in this circuit have awarded incentive fee awards ranging from $5,000.00 to $25,000") (collecting cases); *Furman v. At Home Stores, LLC,* 2017 U.S. Dist. LEXIS 73816, *4-5 (N.D. Ill. May 1, 2017) (approving service award of $10,000.00 to named plaintiff and $5,000.00 to opt-in Plaintiff).

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an Order that finally approves the parties' settlement and dismisses the claims with prejudice, with each party to bear its own fees and costs except as previously agreed between them.

> Respectfully submitted,
> **WEINHAUS & POTASHNICK**
> *s/ Mark Potashnick*
> Mark Potashnick, Illinois Bar # 6271083
> 11500 Olive Blvd., Suite 133
> St. Louis, Missouri 63141
> Telephone: (314) 997-9150 ext. 2
> Facsimile: (314) 984-810
> markp@wp-attorneys.com
>
> **FORESTER HAYNIE PLLC**
> J. Forester
> Texas Bar No. 24087532
> (admitted *pro hac vice*)
> Texas Bar No. 24055180
> 400 N. Saint Paul Street, Suite 700
> Dallas, Texas 75201
> (214) 210-2100 phone
> (214) 346-5909 fax
> jay@foresterhaynie.com
>
> **ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

> *s/ Mark Potashnick*